UNITED STATES ex rel. GEGIOW et al. v. UHL, Acting Immigration Com'r.

(Circuit Court of Appeals, Second Circuit. May 14, 1914.)

No. 290.

ALIENS (§ 54*)—ORDER EXCLUDING IMMIGRANTS—REVIEW ON HABEAS CORPUS.

A finding by immigration officers that alien immigrants were likely to become a public charge, and a consequent order excluding them, cannot be reviewed by the courts, if there is any evidence to support such finding; and the evidence need not be such as would be admissible in a court in formal legal proceedings.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Ward, Circuit Judge, dissenting, holds that evidence to sustain such an order must be embodied in the record upon which the case is reviewable by the Secretary of the Department of Labor.

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from an order of the District Court for the Southern District of New York dated March 3, 1914 (211 Fed. 236), dismissing a writ of habeas corpus and remanding the relators to the custody of the respondent. The immigration officials having found that the relators were liable to become public charges they were excluded and ordered deported.

Ralph Barnett and Morris Jablow, both of New York City, for appellants.

H. Snowden Marshall, U. S. Atty., and Harold A. Content, Asst. U. S. Atty., both of New York City, for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The sole question presented by this appeal is whether there was any evidence to sustain the finding of the immigration officials that each of these aliens is liable to become a public charge. The law provides that the decision of the appropriate immigration officers, if adverse to the admission of the alien, shall be final unless reversed on appeal to the Secretary of the Department of Labor. Act Feb. 20, 1907, c. 1134, § 25, 34 Stat. 906 (U. S. Comp. St. Supp. 1911, p. 515). In the case at bar the decision of the board of special inquiry was affirmed by the Secretary of the Department of Labor.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In U. S. ex rel. Rosen v. Williams, 200 Fed. 538, 541, 118 C. C. A. 632, the leading authorities were reviewed by this court and the conclusion was reached that we considered the action of the immigration officers final in every case where there was any evidence to support it. In the nature of the case these inquiries must be swift and summary. The formality of court proceedings cannot be had and is not expected where, in many cases, witnesses cannot be produced for examination and cross-examination. The members of these boards have, however, the great advantage of seeing the immigrant and determining from personal observation and examination his fitness to enter the country. It is plain from a reading of the law that degenerates or those so constituted mentally, physically or morally that they may be a burden upon or a menace to society, are not wanted here. In the case at bar no one of the immigrants can speak our language or any language that is understood in this country. Even the Russian interpreters employed by the Department could not understand them. They all come from a remote province of Russia and have no one here under legal obligation to support them. They know no trade and only one can read or write in his own language. They were all ticketed through to Portland, Or., and had sums aggregating slightly more than $25 each. They were not employed and no actual promise of employment had been given them. On the contrary, the immigration officers had ascertained by published reports and inquiries that owing to depressed labor conditions, the prospect of an unskilled laborer obtaining work was most unfavorable. In such circumstances, how long after reaching Portland would it be before these immigrants became public charges? As soon as the $25 (only one in the party having as much as $51) is exhausted, what is to support them? What is to prevent them from being thrown upon the charity of the town? It is true that they may succeed in obtaining work, but it is, to say the least, equally true, that they may not do so. It is the latter contingency which makes them undesirable aliens. Certainly we cannot find that the decision of the board, that they are likely to become public charges, has no evidence to support it; on the contrary, the conclusion seems to follow directly from the facts.

We do not assert that all of this evidence would be admissible in a court of law or equity; it is not necessary that it should be. No immigration act could be enforced which required all these facts to be established with the same formality and certainty which is required in the courts. The board had an opportunity to see the relators and to determine by personal observation what manner of men they were. The board knew that they were unable to speak any language known in this country, that only one could read or write, that when the small sums in their possession were exhausted they would starve unless assisted and that there was no one here under any legal obligation to assist them. The board was also enabled from information derived from the press and other sources to determine the likelihood of the relators securing employment when they reached Portland and was justified in finding that conditions there were such that the chance of employment was most unlikely. It is true that in-

formation in this form would not be permitted in a court of law, but the immigration officers cannot delay these proceedings indefinitely. They cannot summon witnesses from the Pacific states or send commissions there. If they were satisfied from information received that there was no market in Portland for such services as these relators could render, they were justified in acting upon such information, just as they would be if satisfied from reports in the press or from any reliable source that Portland had been destroyed by flood or fire or that an epidemic of cholera was raging there. Congress has placed the determination of these questions in the hands of trained officials and their conclusions upon disputed questions of fact are final and conclusive. It is only in the very rare instance that a finding is without any proof to support it that the courts may interfere.

We think these views are sustained by the following authorities: Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Lee Lung v. Patterson, 186 U. S. 168, 22 Sup. Ct. 795, 46 L. Ed. 1108; Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082; U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup Ct. 734, 56 L. Ed. 1165.

The order dismissing the writ is affirmed.

WARD, Circuit Judge (dissenting). Every alien not within the classes excluded by the act of 1907 has a right to enter this country and also has a right to the writ of habeas corpus to test whether his detention is lawful, but not whether the finding of the administrative officers is erroneous in point of fact. It is the law of this district that there must be some evidence to support the finding of the board. Rosen v. Williams, 200 Fed. 538, 118 C. C. A. 632. I think it is also the law of the Supreme Court, because Mr. Justice Pitney said, as to an objection that there was no evidence to support the order made by the Board in Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 32 (57 L. Ed. 218):

"As to the first point, an examination of the evidence upon which the order of deportation was based convinces us that it was adequate to support the Secretary's conclusion of fact. That being so, and the appellant having had a fair hearing, the finding is not subject to review by the courts."

The aliens were all young and healthy, were provided with transportation to Portland, Or., each having at least $25 cash and fellow countrymen at the point of destination. The ground upon which the board excluded them was because it was inclined to believe from reports of industrial conditions in Portland that they would not obtain employment at this season. The board does not state whether the reports were oral or written, when they were made, who made them, whether the person or persons making them were qualified to express an opinion, or finally, what the reports were.

Section 25 of the act of 1907 provides, inter alia:

"All hearings before boards shall be separate and apart from the public, but the said boards shall keep a complete, permanent record of their proceedings and of all such testimony as may be produced before them."

Then it goes on to provide an appeal for the alien to the Secretary of Labor, which shall stay proceedings—

"until the receipt by the Commissioner of Immigration at the port of arrival of such decision which shall be rendered solely upon the evidence adduced before the board of special inquiry."

Unless the alien gets this review from the Secretary, he has not had a fair hearing; but how could the Secretary possibly review this opinion of the board, when he was absolutely without any evidence as to what the opinion depended upon? Of course, the reports in question need not be proved in accordance with legal rules; but they should at least be so stated that the Secretary can review them. The case of Tang Tun v. Edsell, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606, shows how merely hearsay evidence was obtained and included in the record.

I think there was no evidence whatever to support the order, and that the aliens should be discharged.