HOWE, Immigration Com'r, v. UNITED STATES ex rel. SAVITSKY.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

No. 72.

1. ALIENS ⊛≈53—IMMIGRATION—UNLAWFUL ENTRY.

Where a naturalized citizen of Canada, on being requested by his brother, a resident of the United States, to come into this country on account of the dangerous illness of the brother's wife, applied to the immigration office in Montreal, established pursuant to Immigration Act Feb. 20, 1907, c. 1134, § 32, 34 Stat. 908 (Comp. St. 1916, § 4281) for permission to enter the United States, and after examination of himself and of his wife was given a pass, the entry of such person into the United States cannot be deemed in violation of law.

2. ALIENS ⊛≈53—IMMIGRATION—DEPORTATION—PERSONS LIKELY TO BECOME PUBLIC CHARGE.

Immigration Act 1907, § 2, as amended by Act March 26, 1910, c. 128, 36 Stat. 263 (Comp. St. 1916, § 4244), provides for the exclusion of aliens likely to become a public charge and persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude. Section 20 of the act of 1907 (Comp. St. 1916, § 4269) provides for deportation within three years after entry of an alien who shall become a public charge from causes existing prior to landing. A naturalized citizen of Canada who was physically fit, after regularly obtaining a pass, entered the United States. Thereafter, it appearing that a check which he had drawn while in Canada proved bad, and there being a contention that he was guilty of fraud, the alien was ordered deported as a person liable to become a public charge at the time of his entry. Held, that as the alien denied any dishonesty or commission of an offense, and as it appeared that he had entered into business in the United States and was earning a substantial salary, he cannot be deported as a person liable to become a public charge, or as one who has committed or attempted the commission of a crime involving moral turpitude.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding by the United States, on the relation of Harry Savitsky, against Frederick C. Howe, as Commissioner, etc., for discharge of the relator from custody under an order of deportation. From an order issuing the writ, respondent appeals. Affirmed.

Francis G. Caffey, U. S. Atty., of New York City (Harold A. Content, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Goldstein & Goldstein, of New York City (Jonah J. Goldstein and Myron S. Yochelson, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of Judge Mayer in a habeas corpus proceeding discharging an alien ordered to be deported to Montreal, Canada, on two grounds: First, that he had entered the United States without the inspection required by section 20 of the Immigration Act of February 20, 1907; and, second, that under section 2 of that act as amended March 26, 1910, he was a person likely to become a public charge at the time of his entry. The relevant provisions of section 20 are:

"That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall, upon the warrant of the Secretary of * * * Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States." Comp. St. 1916, § 4269.

The relevant provisions of section 2 are:

"That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons, and persons who have been insane within five years previous; persons who have had two or more attacks of insanity at any time previously; paupers; persons likely to become a public charge; professional beggars; persons afflicted with tuberculosis or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such mental or physical defect being of a nature which may affect the ability of such alien to earn a living; persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; * * * prostitutes, or women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose. * * *" Comp. St. 1916, § 4244.

Section 32 provides:

"That the Commissioner General of Immigration, under the direction or with the approval of the Secretary of * * * Labor, shall prescribe rules for the entry and inspection of aliens along the borders of Canada and Mexico, so as not to unnecessarily delay, impede, or annoy passengers in ordinary travel between the United States and said countries, and shall have power to enter into contracts with transportation lines for the said purpose." Comp. St. 1916, § 4281.

[1] In pursuance of the foregoing section the government has established a Board of Special Inquiry at Montreal. The relator, Savitsky, is a Russian by birth and a naturalized citizen of Canada, 26 years of age, having a wife and an infant daughter. His brother Abraham, a resident of Brooklyn, whose wife was dangerously ill, wrote requesting him to come to Brooklyn. He received this letter December 1, 1916, and at once applied to the immigration office in Montreal for permission to enter the United States, submitted to a physical examination, said that he was going to Brooklyn because of the illness of his brother's wife (who shortly after died), and did not know whether he would return or stay there permanently. Thereupon he was required to bring his wife, who was asked whether she knew of his intention to enter the United States, and she replied that she did, and gave her consent. He was then given a pass permitting him to enter, which he did, arriving at New York City December 4th. There seems to us to be no ground whatever for saying that he entered in violation of law.

[2] It furthermore appeared that he left $100 with his wife in Canada and took $100 with him, and there is no pretense that he was in any respect physically unfit. After being in Brooklyn two weeks he entered into partnership with his brother Abraham, investing $300 in the business and earning about $25 a week. It came, however, to the knowledge of the immigration officials that Savitsky had drawn a check for $113 before leaving Canada which proved bad, and that in a dispute with one Solomon Cohen arising out of the purchase of a milk

route, Cohen charged him with having sold some of the equipment and kept the proceeds. Of all these things Savitsky made explanations which did not satisfy the immigration inspector, who believed him guilty of dishonest practice in Canada. It is not necessary to go further into the details. Suffice it to say that it was for this reason Savitsky was found to be likely to become a public charge at the time of entry.

Section 2 of the act expressly covers exclusion because of the commission of a felony or other crime involving moral turpitude, and conditions the exclusion upon either a conviction of the alien or on an admission by him, neither of which exists in this case. If an immigrant may be excluded on the theory that because of charges of dishonesty neither proved nor admitted, this special provision of the act would appear to be useless. Certainly it can be circumvented in any case. It seems to us evidently intended, by defining the proof required, to prevent just such conjectures as were indulged in by the immigration inspector in this case. Indeed, with such latitudinarian construction of the provision "likely to become a public charge," most of the other specific grounds of exclusion could have been dispensed with. Idiots, imbeciles, feeble-minded persons, insane persons, persons affected with tuberculosis and prostitutes, might all be regarded as likely to become a public charge. The excluded classes with which this provision is associated are significant. It appears between "paupers" and "professional beggars." We are convinced that Congress meant the act to exclude persons who were likely to become occupants of almshouses for want of means with which to support themselves in the future. If the words covered jails, hospitals, and insane asylums, several of the other categories of exclusion would seem to be unnecessary. We are referred to a decision of the District Court for the Southern District of New York in United States ex rel. Freeman v. Williams (D. C.) 175 Fed. 274, in which the deportation of an alien whose career before entering the United States had been one of habitual delinquency was sustained on the ground that he was likely to become a public charge. We are not persuaded by this decision, and think Savitsky did not fall within the class under which the order of deportation was made. Gegiow v. Uhl, 239 U. S. 9, 36 Sup. Ct. 2, 60 L. Ed. 114.

The order is affirmed.