## Ex parte MITCHELL.

### (District Court, N. D. New York. March 3, 1919.)

1. **ALIENS** ⟢49— GROUNDS FOR DEPORTATION—"PERSON LIKELY TO BECOME A PUBLIC CHARGE."

    To warrant the exclusion or deportation of an alien, under Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, § 4289¼b), as a "person likely to become a public charge," some facts or conditions must be shown which make it "likely" that such person will become an occupant of an alms-house, or otherwise require support at public expense, for want of means to support himself in the future.

2. **ALIENS** ⟢49—GROUNDS FOR DEPORTATION—PERSON LIKELY TO BECOME A PUBLIC CHARGE.

    An alien woman 42 years old, in good health, who is and has been able to support herself, and has both real and personal property in this country, is not subject to deportation as a "person likely to become a public charge," because of the possibility that she may be deprived of her property by being made defendant in a suit not brought or even threatened.

3. **ALIENS** ⟢54—PROCEEDING FOR DEPORTATION—REVIEW ON HABEAS CORPUS.

    A finding by immigration officers or the Secretary of Labor that an alien is subject to deportation is not conclusive, and may be reviewed on habeas corpus, and if there is no evidence to sustain the findings of fact, or if such findings are insufficient in law to warrant deportation, it is the duty of the court to so decide.

4. **ALIENS** ⟢46—RIGHT OF DEPORTATION—LIMITATION BY STATUTE.

    The statute, by enumerating the conditions upon the allowance of an alien to land or remain in the country may be denied, prohibits the denial in other cases.

Petition of Eunice Mitchell for writ of habeas corpus. Writ granted.

The petitioner, Eunice Mitchell, is now held by Don W. McIntosh, Inspector of Immigration, under an order of deportation made by John W. Abercrombie, Acting Secretary of Labor, on the ground she is a person likely to become a public charge, and is threatened with deportation by virtue thereof.

She has obtained this writ of habeas corpus on the claim that she is illegally held and detained and restrained of her liberty, for the reasons the warrant or order of deportation was made in excess of the power of the officers and department making it, and is void because on the undisputed facts she is not and was not a person likely to become a public charge, and never was and there is no evidence whatever that she is or ever has been such a person, and that she is not within the description of any class of alien persons who may be denied admission into the United States, or who may be deported therefrom. The alien was given a hearing, and all the evidence and testimony is before the court. The contention of the petitioner is that the order of deportation was made and the warrant issued on an entire misconception of the law as to what constitutes a person "likely to become a public charge."

George H. Cobb, of Watertown, N. Y., for petitioner.
D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y., opposed.

RAY, District Judge (after stating the facts as above). [1] Prior to the Act of February 5, 1917, c. 29, § 3, 39 Stat. 875 (Comp. St. 1918, § 4289¼b), in giving a description of the classes of persons who shall be excluded from admission into the United States, the words "persons likely to become a public charge" were inserted between the words "paupers" and "professional beggars," and the courts held (see cases

⟢For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hereafter cited) that, reading the Immigration Act together and considering the connection in which the words "persons likely to become a public charge" were used, the meaning to be given such words· was "those persons who are likely to become occupants of almshouses for want of means with which to support themselves in the future." This is the natural meaning we would give the words. In the Act of February 5, 1917, the same words are used, viz. "persons likely to become a public charge," but the location of such words is changed, and now we have:

"Persons who have come in consequence of advertisements for laborers printed, published or distributed in a foreign country; ·persons likely to become a public charge; persons who have been deported under any of the provisions of this act, and who may again seek admission within one year from the date of such deportation, unless prior to their re-embarkation at a foreign port, or their attempt to be admitted from foreign contiguous territory, the Secretary of Labor shall have consented to their reapplying for admission," etc.

I am unable to see that this change of location of these words in the act changes the meaning that is to be given them. A "person *likely* to become a public charge" is one who for some cause or reason appears to be about to become a charge on the public, one who· is to be supported at public expense, by reason of poverty, insanity and poverty, disease and poverty, idiocy and poverty, or, it might be, by reason of having committed a crime which, on conviction, would be followed by imprisonment. It would seem there should be something indicating the person is liable to become, or shows probability of her becoming, a public charge.

In this case it is sought to deport the above-named alien, a subject of Great Britain, and a citizen of Canada, whence she came into the· United States, some three or four years ago, on the sole ground that she is a "person likely to become a public charge." There is not and has not been produced or presented to any immigration officer or before this court a scintilla of evidence that she is or has been a public charge in any degree, at any time or place, or that she is liable or likely to become a public·charge within the meaning of the Immigration Act and deportation laws. There is no evidence whatever that the alien at any time has relied in any degree on the charity of others. The entire evidence produced, and on which the order was based, is before the court. On the other hand, the evidence is and shows, and is undisputed, that the alien is a woman 42 years of age, in good health, a nurse on occasion, a preacher of the gospel; and that she is able to earn her own living and always has done so, and that she is the owner in her own name and right of real estate at Watertown, Jefferson county, N. Y., where she resides and has resided for at least three years last past, worth some hundreds of dollars, and also is the owner of quite an amount of personal property. Her relatives and brothers are well to do.

·· [2] The theory advanced, and on which the order or warrant of deportation was granted and is sought to be sustained, and deportation· had, is that the alien has excited the jealousy and possibly the resent-

ment of a Mrs. S——, a married lady, by too great familiarity in conversation and association with her husband, and by living in the same house with him, not alone, however, other ladies and people living there with her, and by receiving from him lessons in bicycle riding, evenings, and that Mrs. S—— has left her husband and sued him for a separation, the action being now pending in the Supreme Court of the state of New York, untried, and that Mrs. S—— *may* sue this alien for alienating the affections of her husband, and in such suit *may* recover damages and take all of the alien's property, and leave her without means of support, except her personal earnings. It is also suggested that the alien *may possibly* be arrested on a criminal charge, tried, convicted, and imprisoned, and that *in such event* she *would* become a public charge, as the state would be compelled to board her during such imprisonment. There is no evidence whatever that such a suit, or any suit, or such a prosecution, or any prosecution, has been commenced, or is even threatened, or is contemplated. The separation suit is based on a charge of cruel and inhuman treatment on the part of the husband, but the alien is not named in the papers in the suit.

Such speculative and possible, but remote and conjectural, occurrences do not indicate or tend in any degree to show that the alien is or has been a person "likely to become a public charge." The alien *may* become sick; she *may* lose her house by fire; she *may* lose her personal property by bad investments. All this is possible, but not probable. There is no claim that this alien is suffering, or that she has suffered at any time, from any mental or physical defect. It is not claimed this alien has been convicted, or even charged with the commission, of any crime, or that she came to the United States, or is in the United States, for any immoral or improper purpose. On the other hand, her occupation has been the preaching of the gospel and nursing of the sick when her services were needed.

Putting the "worst side out," the facts are that this alien is or was a member of the Holiness Church, so called, and a preacher therein; that she came from near Montreal, Canada, to the city of Watertown, Jefferson county, N. Y., where she established or was put in charge of a mission and preached; that she met with success, and that Mr. and Mrs. S—— were members of her congregation, and that she was invited to and visited at their house; that Mr. S—— was prominent in the church, and that this brought him and the alien much together in discussing church affairs; that the alien for a time lived in the same house where Mr. S—— lived, but with others occupying the same house; that Mr. S—— did give the alien some lessons in bicycle riding; that the alien loaned Mr. S—— some money, about $800, at one time, to aid him in building operations in which he was engaged; that Mrs. S—— did become jealous and dissatisfied regarding this intimacy, and did have some words with the alien on the subject of the attentions paid her by her husband, and that she thereafter left her husband. There is no evidence or charge of any improper sexual relations between the alien and Mr. S——. Several witnesses give to the alien a good character and reputation from the speech of people, and there is no evidence of a bad character or reputation. There was a division in the

church, and a new minister was installed, but the alien installed a new mission, and this, of course, excited the opposition of the new minister. It is evident that wisdom and discretion under such circumstances would have dictated that this alien and Mr. S—— keep widely apart, but failure to do so cannot be regarded as evidence that the alien is "likely to become a public charge." It shows want of good judgment under the circumstances, but not the commission of a crime or misdemeanor, or immoral practices or conduct.

It seems to me that the Supreme Court of the United States, in Gegiow v. Uhl, Acting Commissioner of Immigration, 239 U. S. 3, 8–10, 36 Sup. Ct. 2, 60 L. Ed. 114, and cases cited, reversing United States v. Uhl, 215 Fed. 573, 131 C. C. A. 641, and the Circuit Court of Appeals in this (the Second) circuit, in Howe, Immigration Commissioner, v. United States ex rel. Savitsky, 247 Fed. 292, 294, 159 C. C. A. 386, have settled this question against the validity of this order of deportation and the right of the government officials to deport this alien. In Howe v. United States, supra, the Circuit Court of Appeals said:

"It seems to us evidently intended, by defining the proof required, to prevent just such conjectures as were indulged in by the immigration inspector in this case. Indeed, with such latitudinarian construction of the provision 'likely to become a public charge,' most of the other specific grounds of exclusion could have been dispensed with. Idiots, imbeciles, feeble-minded persons, insane persons, persons affected with tuberculosis, and prostitutes might all be regarded as likely to become a public charge. The excluded classes with which this provision is associated are significant. It appears between 'paupers' and 'professional beggars.' We are convinced that Congress meant the act to exclude persons who were likely to become occupants of almshouses for want of means with which to support themselves in the future. If the words covered jails, hospitals, and insane asylums, several of the other categories of exclusion would seem to be unnecessary. We are referred to a decision of the District Court for the Southern District of New York in United States ex rel. Freeman v. Williams (D. C.) 175 Fed. 274, in which the deportation of an alien whose career before entering the United States had been one of habitual delinquency was sustained on the ground that he was likely to become a public charge. We are not persuaded by this decision, and think Savitsky did not fall within the class under which the order of deportation was made. Gegiow v. Uhl, 239 U. S. 9, 36 Sup. Ct. 2, 60 L. Ed. 114."

The court holds expressly that the words "likely to become a public charge" are meant to exclude only those "persons who were likely to become occupants of almshouses for want of means with which to support themselves in the future." Such in effect is the decision in Gegiow v. Uhl, supra, where the court said:

" 'Persons likely to become a public charge' are mentioned between paupers and professional beggars, and along with idiots, persons dangerously diseased, persons certified by the examining surgeon to have a mental or physical defect of a nature to affect their ability to earn a living, convicted felons, prostitutes, etc. The persons enumerated, in short, are to be excluded on the ground of permanent personal objections accompanying them, irrespective of local conditions, unless the one phrase before us is directed to different considerations than any other of those with which it is associated. Presumably it is to be read as generically similar to the others mentioned before and after."

[3] But it is said the Secretary of Labor at Washington has passed on the *question of fact,* and has decided as matter of fact that this alien is a person likely to become a public charge, and that this finding

is conclusive on the court. But *there are no facts, and not a single fact,* and the record is before the court, indicating that she is such a person. The facts being before the court, it becomes a question of law whether or not this alien is within the description of persons subject to deportation. Gegiow v. Uhl, 239 U. S. 31, 36 Sup. Ct. 2, 60 L. Ed. 114; Gonzales v. Williams, 192 U. S. 1, 15, 24 Sup. Ct. 177, 48 L. Ed. 317; Howe v. United States, 247 Fed. 292, 159 C. C. A. 386 refusing to follow U. S. ex rel. Freeman v. Williams (D. C.) 175 Fed. 274.

In Gegiow v. Uhl, supra, reversing 215 Fed. 573, 131 C. C. A. 641, the Supreme Court says the words "likely to become a public charge" are "to be read as generically similar to the others mentioned before and after"; that is, generically similar to "paupers" and to "professional beggars." And so, in substance, says the Circuit Court of Appeals in this circuit. To repeat, says the court:

"We are convinced that Congress meant the act to exclude persons who were likely to become occupants of almshouses for want of means with which to support themselves in the future."

Within both these decisions, this alien, as matter of law, taking every fact stated in the evidence as true (excluding or including the statement of the alien), is *not* a person "likely to become a public charge," and is not within the description of any person liable to deportation. In the three cases cited the Commissioner of Labor or immigration officers decided that the person sought to be deported was within the description, and deportation was ordered; but the writ of habeas corpus was sustained on appeal, and the alien released. This alien does not come under the provisions of the act, and this is a question of law, which the courts may and must decide. Gegiow v. Uhl, supra. In that case the court held:

"The courts have jurisdiction to determine whether the reasons given by the Commissioner of Immigration for excluding aliens under the Alien Immigration Act agree with the requirements of the act; and, if the record shows that the Commissioner exceeded his powers, the alien may obtain his release upon habeas corpus.

"The Alien Immigration Act, by enumerating conditions upon which aliens may be denied admission, prohibits the denial of admission in other cases.

"The conclusiveness of the decisions of immigration officers under section 25 of the Immigration Act is conclusiveness of questions of fact; but the court may review the findings of a Commissioner on the question of whether the alien comes under the act. Gonzales v. Williams, 192 U. S. 1 [24 Sup. Ct. 177, 48 L. Ed. 317].

"An alien cannot be excluded under the Alien Immigration Act simply because the immigration officers declare that he may become a public charge on account of overstocked conditions of the labor market at the point of immediate destination.

"Under section 1 of the Alien Immigration Act, the ground of exclusion of persons enumerated are permanent personal objections, irrespective of local conditions."

In Frick, Immigration Inspector, v. Lewis, 195 Fed. 693, 115 C. C. A. 493, the lower court was reversed on the ground there was *some evidence* of prostitution, and that therefore on habeas corpus the decision of the Department of Commerce and Labor on this question of fact could not be overruled, but the court expressly said:

· · ."*Where there is nothing to support a charge, we agree that the department cannot rightfully issue a warrant to deport; for that would be a clear abuse of power.*"

It is *not* true that on habeas corpus the court is not at liberty to review the evidence. It is its *duty* to review the evidence for the purpose, not of ascertaining or deciding on the weight or preponderance or credibility of the evidence when there is a question as to what the facts are, but for the purpose of ascertaining and determining whether or not there *is any evidence* tending to support the charge made, and whether or not the charge made, if established, is one that justifies or warrants deportation under the statute. Is the person one subject to deportation, and is there any evidence legitimately tending to show that such person is within the description of persons who may be deported? In this case the first inquiry is: "Is this petitioner an alien, and therefore, *in a proper case,* subject to deportation?" So much is admitted. ·The next question is: ·"Is there any evidence that the alien is within the statutory description of persons who may be deported?" The charge is, and there is no pretense of any other ground for the warrant of deportation, that the petitioner is a "person likely to become a public charge." The question is not, "Is there a *remote possibility* that she *may* become a public charge, or *may exigencies arise* which *might* make her a public charge, but is there any evidence that she *is* or is *"likely to become a public charge"*—that is, a pauper, or poor person who will be, or might properly be, sent to an almshouse and supported at the public expense? See cases cited.

[4] As already stated and shown, there is not a scintilla of evidence ·that this alien is or ever has been such a person. Said the court in Gegiow v. Uhl, supra:

"The courts are *not* forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute, by enumerating the conditions upon which the allowance to land may be denied, *prohibits the denial in other cases.* And when the record shows that a Commissioner of Immigration is exceeding his power, the alien may demand his release upon habeas corpus. * * * This was implied in Nishimura Ekiu v. ·United States, 142 U. S. 651 [12 Sup. Ct. 336, 35 L. Ed. 1146], relied on by the government. As was said in Gonzales v. Williams, 192 U. S. 1, 15 [24 Sup. Ct. 177, 180 (48 L. Ed. 317)]: 'As Gonzales did not come within the act of 1891, the Commissioner had no jurisdiction to detain and deport her by deciding the mere questions of ·law to the contrary.' Such a case stands no better than a decision without a fair hearing, which has been held to be bad. Chin Fon Yow v. United States, 208 U. S. 8 [28 Sup. Ct. 201, 52 L. Ed. 369]."

In Lewis v. Frick, Immigration Inspector, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967, the true rule is enunciated, viz.:

·· "Where, as in this case, there was evidence sufficient to justify the Secretary ·of Commerce and Labor in concluding that the alien *was within the prohibitions* of the Alien Immigration Act, and the hearing was fairly conducted, the decision of the Secretary is binding upon the courts."

The court then examined the evidence and said:

"But, without regard to them, enough appears to show that he was fully justified in concluding as a matter of fact that the whole story of the marriage in Warsaw was a fabrication, and that in truth Lewis went from Detroit to Windsor upon information from which he inferred that the woman was

an alien and a prostitute, willing to accompany him to Detroit for an immoral purpose, and that he brought her to Detroit for that purpose. This being so, and there being no contention that the hearing was not fairly conducted, the finding of the Secretary upon the question of fact is binding upon the courts. Low Wah Suey v. Backus, 225 U. S. 460, 468 [32 Sup. Ct. 734, 56 L. Ed. 1165]; Zakonaite v. Wolf, 226 U. S. 272, 275 [33 Sup. Ct. 31, 57 L. Ed. 218]."

In Gegiow v. Uhl, supra, the Supreme Court said:

"It would be an amazing claim of power if commissioners decided not to admit aliens because the labor market of the United States was overstocked."

This was said in answer to the proposition advanced in that case that the aliens were subject to deportation for the reason that at that place in the United States to which they were bound there was no work to be had, the labor market being more than fully supplied, and the aliens had but little money, and therefore the aliens were likely to become a public charge, as they would not be able to obtain employment, a purely suppositious and conjectural situation. So in the instant case it is an amazing claim of power to propose to deport this alien for the reason she *may* by reason of sickness, or misfortune, or being made a defendant in a suit not brought, or even threatened, be deprived of her ample means which she now owns and possesses. There must be some fact, or facts, or conditions shown which indicate and make it *"likely"* that the alien will become a public charge. Nothing of the kind appears in this case.

I conclude and hold that there was and is no evidence whatever in this case tending to show or indicate that the alien ever has been, or was or is likely to become, a public charge; that all the evidence produced before the officials of the United States is before the court, and that it has the right and power to examine it, for the purpose of ascertaining what the undisputed facts were and are; that on the evidence it appears uncontradicted:

(1) That the alien is not a person likely to become a public charge, but is a person capable of and fully able to earn her own living and provide for herself, and that in addition she is possessed and the owner in her own right of ample property in the state of New York to care for herself.

(2) That the alien is not a person within any of the classes who may be excluded from admission into the United States, or who may be deported therefrom, and that she has not committed any act which makes her subject or liable to deportation.

(3) That she did not enter the United States in violation of any law, and is not in the United States in violation of any law.

(4) That at the time of her last coming into the United States the alien did not belong to any of the classes who might be excluded from the United States, or who, having come, are subject to deportation.

(5) That the making of the warrant or order for her deportation was in excess of the power of the Commissioner of Labor and of the department of the government making it, and is void.

(6) That the alien, the petitioner herein, is illegally restrained of her liberty, and is entitled to her discharge and to be set at liberty.

There will be an order sustaining the writ, and directing the discharge of such alien.