## NG FUNG HO et al. v. WHITE, Immigration Com'r.

(Circuit Court of Appeals, Ninth Circuit. July 6, 1920. Rehearing Denied September 7, 1920.)

### No. 3462.

**1. Aliens ⊕⟶21—Chinese aliens who may be deported under Immigration Act 1917.**

Under Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼jj. 4289¼u), an alien, who shall have entered or who shall be found in the United States in violation of the Chinese Exclusion Laws (Comp. St. § 4290 et seq.), may at any time within five years after entry, and irrespective of the time of entry, whether before or after passage of the act of 1917, be taken into custody on the warrant of the Secretary of Labor and deported.

**2. Aliens ⊕⟶32 (8)—Evidence insufficient to warrant deportation of Chinese alien.**

That a Chinese alien was arrested for gambling and fined on a plea of guilty some years after his entry on a merchant's certificate. which was not impeached, *held* not sufficient to warrant his deportation on the ground that he had criminal tendencies or was likely to become a public charge at the time of entry.

**3. Aliens ⊕⟶32 (5)—In proceeding for deportation of Chinese, burden held to rest on government.**

Where Chinese were admitted as citizens on evidence that their father was a native of the United States, the burden of attack rests on the government; but, where the evidence is sufficient to show that the original certificates granted them were obtained by fraud, deportation may follow.

---

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

Habeas corpus by Ng Fung Ho, otherwise known as Ung Kip, and others, against Edward White, Commissioner of Immigration for the Port of San Francisco. From an order quashing the writ, petitioners appeal. Affirmed in part, and reversed in part.

Geo. A. McGowan, of San Francisco, Cal., for appellants.

Annette Abbott Adams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HUNT, Circuit Judge. The appellants, Ng Fung Ho (alias Ung Kip), Ng Yuen Shew, Lui Yee Lau (alias Louie Pon), Gin Sang Get, and Gin Sang Mo, are five Chinese persons who have been ordered deported from the United States under executive deportation procedure for violations of the Chinese Exclusion Law (Act May 6, 1882, and amendments [Comp. St. § 4290 et seq.]). All of the appellants arrived in the United States prior to May 1, 1917, on which date an amendatory statute, known as the General Immigration Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a, et seq.), became effective.

[1] The first question for decision is whether the Secretary of Labor, under sections 19 and 38 of the Immigration Act of 1917 (sections 4289¼jj, 4289¼u), and within the limitations stated therein, had authority to arrest and deport on departmental warrant, alien Chinese persons found within the United States in violation of the Chinese Exclusion Law, where entry was made prior to the date the above referred to act went into effect; i. e., May 1, 1917. Pertinent excerpts from the two statutes are as follows:

Act Feb. 20, 1907, c. 1134, § 20, 34 Stat. 898, 904, 905: "That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing. shall, upon the warrant of the Secretary of * * * Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States."

Section 21: "That in case the Secretary of * * * Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section 20 of this act."

Act Feb. 5, 1917, § 19: "That at any time within five years after entry, * * * any alien who shall have entered or who shall be found in the United States in violation of this act, or in violation of any other law of the United States, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported: * * * Provided further, that the provisions of this section, with the exceptions hereinbefore noted, shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States" (third proviso).

Section 38: "This act, except as otherwise provided in section 3, shall take effect and be in force on and after May 1, 1917: * * * Provided, that this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent except as provided in section 19 hereof: * * * Provided, further, that nothing contained in this act shall be construed to affect any prosecution, suit, action, or proceedings brought, or any act, thing, or matter, civil or criminal, done or existing at the time of the taking effect of this act, except as mentioned in the third proviso of section 19 hereof; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the laws or parts of laws repealed or amended by this act are hereby continued in force and effect."

It will be seen that section 38 contains two exceptions:

First, "except as provided in section 19 hereof;" and second, "except as mentioned in the third proviso of section 19 hereof."

Inasmuch as these exceptions were not included in sections 43 and 28 of the earlier act of Congress (1907), it is to be assumed they have

relation to the sections of the act of 1917 wherein they appear. Their effect is to modify and restrict the provisions of which they are a part, and we think that they accomplish this by excluding from the other provisions of the provisos the classes of aliens enumerated in section 19, to which the exceptions have reference. Section 19 at great length enumerates the classes of aliens subject to arrest and deportation by warrant of the Secretary of Labor and fixes the time where a limit is specified within which aliens subject to arrest may be taken into custody and deported and by the third proviso hereinbefore quoted, with the "exceptions hereinbefore" noted, the provisions of section 19 are applicable to the classes of aliens mentioned without regard to the time of the entry of such classes into the United States. The classes of aliens are not enumerated in the proviso to section 19, but they are clearly referred to. They are also included within the exception to the first proviso of section 38 by reference to the exception as provided in section 19, and also in the exception to the second proviso of section 38, where again reference is made to the exceptions mentioned in the third proviso of section 19.

We gain assistance as to the intent of Congress from the report of the Senate committee on immigration, which had under consideration the bill for the Immigration Act of 1917. The committee (64th Congress, Senate Report No. 352), referred to the provision of section 19 as being made retroactive, "with certain exceptions." It is true that the committee failed to express what "certain exceptions" it had in mind, but the context shows that the exceptions referred to were those "hereinbefore noted," as referred to in the third proviso of section 19. Among the exceptions noted and referred to are these: An alien who shall have entered or who shall be found in the United States in violation of the act of February 5, 1917; an alien who is hereafter sentenced to imprisonment for one year or more because of conviction in the United States of a crime involving moral turpitude committed within five years after the entry of the alien into the United States; an alien who is hereafter sentenced more than once to a term of imprisonment because of conviction in this country of any crime involving moral turpitude committed at any time after entry. The statute is prospective as to those aliens who enter the United States in violation of the act, while as to the other classes the act is retroactive as to the time of the entry of the alien, but prospective in relation to conviction.

Notwithstanding the difficulty of construction, it is quite evident that the purpose of the proviso was to make section 19 applicable without regard to the time of entry into the United States. By changing the language used in the act of February 20, 1907, so as to make the act apply, not only to those "who shall enter," but to those "who shall have entered," there is evidence of intent to make the provisions of section 19 retroactive. Again, the report of the committee helps to clearer understanding by the statement that it was intended to continue the practice established under the act of 1907—

"of expelling aliens who enter or are found here in violation of the Chinese Exclusion Law, adapting the administrative process of the Immigration Act to that class of cases wherever the proceedings are instituted within the periods of limitation specified therein."

Considering it in all its words and in the light of the Senate report, we construe the law to be that an alien, who shall have entered or who shall be found in the United States in violation of the Chinese Exclusion Law, shall, at any time within five years after entry, and irrespective of the time of entry, whether before or after the passage of the act of 1917, be taken into custody on the warrant of the Secretary of Labor. In Mayo, Commissioner v. U. S. ex rel. Lee Wong Hin, 251 Fed. 275, 163 C. C. A. 431, the Court of Appeals for the Fifth Circuit, Judge Walker dissenting, expressed a different view. It does not appear, however, that the learned court had the benefit of the report of the Senate committee as an aid in the construction of the provisions of the act. But, however that may be, the conclusion we have reached seems to us to be correct and to call for decision in favor of the jurisdiction exercised by the Secretary of Labor. United States v. Woo Jan, 245 U. S. 552, 38 Sup. Ct. 207, 62 L. Ed. 466, cited by appellants, was decided after the Immigration Act of 1917 was passed and made no reference to the amended or new Immigration Law.

Ng Fung Ho, alias Ung Kip, and Ng Yuen Shew were arrested on warrants issued by the Assistant Secretary of Labor, dated September 20, 1917, charged with being found in the United States in violation of the Chinese Exclusion Law. They were duly arraigned, notified of their rights, had counsel, waived the right to have witnesses subpœnaed, and presented their claims by brief filed by counsel. Thereafter the aliens were ordered deported, and warrants of deportation were issued. There was evidence from which the conclusion was authorized that Ng Fung Ho, alias Ung Kip, at the time of his departure for China, was not a merchant within the meaning of the law, but was a laborer, and had been a laborer for years before his departure for China and that when he returned to the United States he again became a laborer. It was therefore found that his re-entry was accomplished by falsehood and fraud, and that he could not re-enter as a laborer, and did not have a laborer's certificate as provided by law. Inasmuch as the right of son, Ng Yuen Shew, to enter depended upon the status of the father, the decision that the son could not enter must be sustained. Ng Leong v. White, 260 Fed. 749, 171 C. C. A. 487.

[2] Lui Yee Law was arrested on departmental warrant dated February 16, 1918, and charged with being in the United States in violation of the Chinese Exclusion Law, in that he was a laborer not possessing a certificate of residence; that, though entering as a merchant, he has become a laborer; and also that he was a person likely to become a public charge at the time that he entered the United States. He had originally entered in 1915 as a merchant with a section 6 certificate. He was arraigned, had a hearing, was represented by counsel, and in due course was ordered deported, and warrant issued. In a judicial proceeding, had some time before the present proceeding, it was held that, although the mercantile status of the alien when he entered the United States had not been successfully challenged, nevertheless there was evidence to sustain the Department of Labor in holding that the man was a gambler, and had been a gambler for some months before his arrest, and thus the question was raised whether he was a person

likely to become a public charge. The evidence tended to show that about January, 1918, the alien lived in Texas, where he was a professional gambler; that about that time he was arrested in a gambling room; that he pleaded guilty to the charge of gambling and was fined $25. We agree with the ruling that there is nothing to show that the alien obtained his section 6 certificate by fraud or that it was untrue. Lui Hip Chin v. Plummer, 238 Fed. 763, 151 C. C. A. 613. But upon the evidence we are unable to find that the alien was likely to become a public charge at the time he entered the United States. Having entered in 1915, after producing a section 6 certificate, and not having been a public charge, we cannot see that an arrest in January, 1918, and a plea of guilty, and the payment of a fine of $25 tend to prove that the alien had criminal tendencies when he arrived in the United States, or was likely to become a public charge. Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114; Howe v. United States, 247 Fed. 292, 159 C. C. A. 386; Ex parte Hill (D. C.) 245 Fed. 687; Ex parte Mitchell (D. C.) 256 Fed. 229.

In Howe v. United States, 247 Fed. 292, 159 C. C. A. 386, the Court of Appeals for the Second Circuit held that the words "likely to become a public charge" are meant to exclude only those persons who are likely to become occupants of almshouses for want of means with which to support themselves in the future. This ruling was followed in Ex parte Mitchell (D. C.) 256 Fed. 229; the court citing Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114. We agree with those constructions, and therefore conclude that the appellant Lui Yee Lau is entitled to a reversal of the judgment against him and to an order of discharge.

[3] Appellants Gin Sang Get and Gin Sang Mo, claiming to be brothers, were arrested under warrants dated in November, 1917, charging that they were Chinese laborers found in the United States in violation of section 6 of the Chinese Exclusion Law of 1892 and amended in 1893 (Comp. St. § 4320), and that they had entered "without inspection by means of false and misleading statements." Hearing was had before the immigration authorities, and in due course the Assistant Secretary of Labor ordered the aliens deported; the record also shows that Gin Sang Get entered the United States July 24, 1916, and Gin Sang Mo on April 28, 1917. The aliens were examined at the time of entries, and thereafter admitted to the United States as citizens thereof. The evidence given at the time of their admission tended to show that they were brothers, and were the foreign-born sons of a Chinaman who had theretofore been discharged as a native of the United States by the United States court at San Francisco. The record further shows that, soon after the aliens were admitted, upon investigation it was discovered that certain employés of the Immigration Service at San Francisco had removed the original transcript of evidence concerning the alleged father's landing record.

We need not state the evidence at length; suffice it to say that the immigration authorities discovered that a Chinaman had testified in 1917 that he was the father of the two aliens above mentioned, had testified in 1902 that he was not married, and had testified in 1909 that

he was married, and had named his children, but failed to include Gin Sang Get and Gin Sang Mo. Opportunity was given to the aliens to produce the testimony of their alleged father, and although it was shown that he was in San Francisco, or in the vicinity of that city, he did not appear. The fact that the aliens were admitted into the United States, and that certificates of identity were issued to them, did not foreclose the right of the immigration authorities to institute new proceedings, provided they had sufficient reason to believe that the original findings had been founded upon evidence which was false and perjured, and that the aliens were not lawfully within the United States. In view of the fact that certificates had been issued, the burden of attack is upon the government; but, if, as in this matter, evidence sufficient to show that the original certificates were invalid has been introduced, deportation may follow. Wong Yee Toon v. Stump, 233 Fed. 194, 147 C. C. A. 200; Lui Hip Chin v. Plummer, 238 Fed. 763, 151 C. C. A. 613.

In conclusion, the orders of the District Court, quashing the writ of habeas corpus and remanding petitioners to the custody of the immigration authorities, are affirmed as to all except Lui Yee Lau. As to him the order is reversed, and he is ordered discharged.

Affirmed in part, and reversed in part.