## Ex parte HOSAYE SAKAGUCHI.

## HOSAYE SAKAGUCHI v. WHITE, Immigration Com'r.

(Circuit Court of Appeals, Ninth Circuit. January 9, 1922.)

### No. 3712.

1. **Aliens ⊙═42—Board of special inquiry appointed by commissioner of immigration for port held legally constituted.**

Under the immigration statute (Act Feb. 5, 1917, § 17 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii]), authorizing the appointment of boards of special inquiry from officers and other persons in cases where maintenance of permanent board or the calling in of a detailed board was impracticable, *held*, that it would be presumed in favor of appointment of two officers and a stenographer as such board that the warrantable circumstances existed.

2. **Aliens ⊙═46—Japanese woman held entitled to enter the United States where her husband resides therein.**

Under Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), a Japanese woman who before leaving Japan became the wife of a Japanese resident here, is entitled to enter the United States, notwithstanding her husband's subsequent refusal to receive her as his wife.

3. **Aliens ⊙═49—Facts as to ability of foreign woman held not to sustain finding that she was likely to become public charge.**

An able-bodied Japanese woman with a fair education, with no mental or physical disability, with some knowledge of English, skilled as a seamstress and manufacturer of artificial flowers, with a disposition to work and support herself, and having a well-to-do sister and brother-in-law domiciled in this country, ready to assist her, and who has a husband living here engaged in business, was wrongly excluded as likely to become a public charge.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Hosaye Sakaguchi was denied admission to the United States, upon a hearing by a commission appointed by Henry M. White, as the United States Commissioner of Immigration of the Port of Seattle, Wash. On appeal to the Secretary of Labor the findings of the Commission were affirmed, and she petitioned for habeas corpus, and on the return to the writ her petition was dismissed, and she appeals. Judgment reversed, and petitioner discharged from custody.

James Kiefer, of Seattle, Wash., for appellant.

Robert C. Saunders, U. S. Atty., and Charlotte Kolmitz, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. On December 23, 1919, the appellant, a Japanese woman, arrived at the port of Seattle from Japan as the proxy wife of Sakaguchi Kuinobuemon, who resided at Seattle. On

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

January 26, 1920, a hearing was had before a special board of inquiry, which consisted of two immigration inspectors and a stenographer appointed to serve on the board. The board unanimously decided that the appellant be excluded on the ground that she was likely to become a public charge. The case was reopened at the appellant's request, and further testimony was taken on her behalf before a special board consisting of two immigration inspectors and a stenographer. That board, one dissenting, again refused her permission to land. On the appeal to the Secretary of Labor the finding of the board was affirmed. The appellant petitioned for habeas corpus, setting forth that she was denied a fair hearing. On the return to the writ her petition was dismissed.

It appeared upon the hearing that some three or four years prior to that time the appellant had gone from Japan to Victoria, B. C., as the proxy wife of a Japanese, with whom she there lived for about six months, whereupon she left him and returned to Japan. Shortly after the appellant arrived at Seattle, Kuinobuemon refused to accept her as his wife, and requested that she be deported to Japan, setting forth as one reason for his refusal to accept her that she had been married before and had been in trouble, facts which he had not known until after her arrival at Seattle. There was evidence that the appellant's brother-in-law and sister resided at Seattle and were desirous of caring for her, and there was some evidence that she might be able to earn her own livelihood, and that she had done so since her release on bond. At the time of the hearings Kuinobuemon had no means and was not employed.

[1] One of the assignments of error is that the board of special inquiry was illegally constituted. This objection was not set forth in the petition for the writ, but it was presented to the court below, and it is here again relied upon. Section 17 of the immigration statute of February 5, 1917 (Fed. Stat. Ann. Supp. 1918, p. 228 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii]), provides as follows:

"That boards of special inquiry shall be appointed by the commissioner of immigration or inspector in charge at the various ports of arrival as may be necessary for the prompt determination of all cases of immigrants detained at such ports under the provisions of the law. Each board shall consist of three members, who shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall from time to time designate as qualified to serve on such boards. When in the opinion of the Secretary of Labor the maintenance of a permanent board of special inquiry for service at any sea or land border port is not warranted, regularly constituted boards may be detailed from other stations for temporary service at such port, or, if that be impracticable, the Secretary of Labor shall authorize the creation of boards of special inquiry by the immigration officials in charge at such ports, and shall determine what government officials or other persons shall be eligible for service on such boards."

We may assume from the record that in the opinion of the Secretary of Labor the maintenance of a permanent board of special inquiry for service at Seattle was not warranted, that it was impracticable to detail regularly constituted boards from other stations for temporary service at that port, and that, in pursuance of the authority conferred upon him

by section 17, the Secretary authorized the creation of a board of inquiry at that port, and determined that the two immigration inspectors and the stenographer should be eligible for service on the board, the stenographer being included in the term "other persons" as used in the statute. Nothing appears in the record to show that these assumptions are not justified. Such being the case, we find no ground for holding that the board was not legally constituted.

[2] Did the appellant have a fair and impartial hearing? It is not contended that the manner of conducting the hearings was unfair or was such as to deprive the appellant of substantial rights. The decision of the board of special inquiry denying the appellant admission to the United States was based on two grounds: First, that she was a laborer without a proper passport; and, second, that she was a person likely to become a public charge. As to the first ground, the argument was that Kuinobuemon, if intending not to accept her as his wife, would have been unable to send for her under the provisions of the "Gentlemen's Agreement," which provides that a husband domiciled in the United States may send for his wife even though she be a laborer, and that she would not have been entitled to a passport if she had sought admission with the avowed intention of assuming a status independent of her husband. The passport, which was properly viséed by the American consul at Kobe, Japan, describes the appellant as the wife of Kuinobuemon, and Kuinobuemon testified that he was married to her in January, 1919. The appellant, being Kuinobuemon's wife when she left Japan, is still his wife, notwithstanding her husband's subsequent refusal to receive her as such; and as his wife she is entitled to enter the United States (39 Stat. p. 877, § 3 [section 4289¼b]), unless subject to exclusion on some other statutory ground.

[3] The board of special inquiry, for the reason that the appellant had but little knowledge of the English language and American customs, thought it not probable that she could independently earn a living in the United States, and that while her brother-in-law, Horikawa, might be willing and able to support her, her claim upon him could not be legally enforced. On those considerations they reached the conclusion that she was likely to become a public charge.

The appellant testified that in Japan, after going through with the grammar school, she graduated from a school for teaching sewing and the arrangement of artificial flowers after spending three or four years therein, after which she was employed as a sewing teacher for three years, for which she received pay; that she had studied English under a private teacher; that she could not speak English well on account of the pronunciation, but could read the second and third readers. On being asked what she expected to do in the United States, she said she expected to support herself independently after a while, but for the time being she would have to ask her brother-in-law and sister to assist her. Horikawa testified that it was his intention to have the appellant make her home in his house, and that he was financially able and willing to receive and support her. In evidence of his ability to support her he presented five letters from prominent wholesale houses of Seattle attesting his standing and financial ability. He testi-

fied that he was conducting a hardware business, and he exhibited copies of his individual income tax returns showing that he paid $25.75 income tax for the year 1918, and $31.19 for the year 1920.

In Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114, it was held that the courts are not forbidden to consider whether the reasons given for the exclusion of aliens agree with the requirements of the statute. Said the court:

"And when the record shows that a commissioner of immigration is exceeding his power, the alien may demand his release upon habeas corpus. The conclusiveness of the decisions of immigration officers under § 25 is conclusiveness upon matters of fact."

It was further held that an alien could not be declared likely to become a public charge on the ground that the labor market in the city of his immediate destination was overstocked. The court alluded to the fact that in Act February 20, 1907, § 2 (34 Stat. 898), which was then in force, persons likely to become a public charge were mentioned between paupers and professional beggars, and along with idiots and persons dangerously diseased or certified to have a mental or physical defect of a nature to affect their ability to earn a living, and that the provision excluding aliens likely to become a public charge was presumably to be read as generically similar to the other provisions with which it was associated. Although in the act of February 5, 1917, under which the present case is to be determined, the location of the words "persons likely to become a public charge" is changed, we agree with Judge Ray in Ex parte Mitchell (D. C.) 256 Fed. 229, that this change of location of the words does not change the meaning that should be given them, and that it is still to be held that a person "likely to become a public charge" is one who, by reason of poverty, insanity, or disease or disability, will probably become a charge on the public. If there were in this case any evidence whatever of mental or physical disability or any fact tending to show that the burden of supporting the appellant is likely to be cast upon the public, we should have no hesitation in saying that the conclusion of the board of special inquiry would be unassailable in a court. But there is in the record no such evidence. Here is an able-bodied woman of the age of 25 years, with a fair education, with no mental or physical disability, with some knowledge of English, skilled as a seamstress and a manufacturer of artificial flowers, with a disposition to work and support herself, and having a well-to-do sister and brother-in-law, domiciled in this country, who stand ready to receive and assist her. We cannot see how it can be said that there was any evidence that she was likely to become a public charge. We think the case comes directly within the ruling in the Gegiow Case. There the aliens came from a remote province of Russia. They knew no trade. They knew no language but their own. Only one could read or write in his own language. They had sums aggregating slightly more than $25 each. They were not employed, and had no promise of employment. They were ticketed through to Portland, Or., where, owing to depressed labor conditions, the prospect of their obtaining work "was most unfavorable." See Howe v. United States, 247 Fed. 292, 159 C. C. A. 386; Ng Fung Ho v. White (C. C. A.) 266 Fed. 765,

769; Ex parte Mitchell (D. C.) 256 Fed. 229; United States v. Howe (D. C.) 235 Fed. 990.

The judgment is reversed, and the appellant is discharged from custody.