## UNITED STATES ex rel. MANTLER v. COMMISSIONER OF IMMIGRATION.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 67.

**1. Aliens ☞53—Alien held not subject to deportation as likely to become public charge.**

Alien 23 years old, in good physical condition, who has been in the country for four years, and who by industry and frugality has saved a substantial portion of her earnings and is employed, cannot be deported as a person who is likely to become a public charge, under Immigration Act Feb. 5, 1917, § 3 (Comp. St. § 4289¼b), even if she had had improper relations with other woman's husband.

**2. Aliens ☞54—Release on writ of habeas corpus required where Commissioner of Immigration exceeds power.**

Where record shows that Commissioner of Immigration exceeded his power, alien is entitled to release on writ of habeas corpus.

**3. Aliens ☞54—Decision of immigration officials on evidence conclusive.**

Decision of immigration officials is conclusive on matters of fact if there is evidence on which to base finding of fact; but, where there is no evidence to warrant finding, the finding is without legal support, and alien is entitled to her release on writ of habeas corpus.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Sophie Mantler, next friend of Josefa Rukerova, against the Commissioner of Immigration. Writ dismissed, and relator appeals. Reversed.

Louis F. Stumpf, of New York City, for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. [1] Josefa Rukerova, an alien, arrived at the port of

New York from Czecho-Slovakia on June 27, 1920, and was duly admitted to this country as an alien. She has lived here continually, and has since worked in a brass factory, and later as a domestic servant, at wages which not only made her self-supporting, but permitted her to save $400 up to the time of her arrest. At the time of her petition for this writ she had $1,000.

While here, she met a married man, who was separated, by agreement, from his wife. The separated wife made complaint to the immigration officials that her husband was living as man and wife with the appellant. Upon this complaint, a warrant for her arrest for deportation was issued. The charge against her was that she was likely to become a public charge by reason of her immoral life, to wit, living in adulterous intercourse. At the hearing the evidence of this was the testimony of the wife that her husband told her of his relations with the appellant. There was offered in evidence, also, an affidavit of the husband, wherein he said that he had known her for two years; that he had taken her out several times, and went to live with her at Fairfield, Conn. He said that he employed her as a domestic for his household, and that he paid her $50 a month; that she knew that he was married, and that he had illicit relations with her during the time that they were at Fairfield. He stated that it was his intention to marry the alien when he could lawfully do so. After a hearing, a warrant of deportation was issued, wherein it was directed that she be taken into custody and returned to the country from whence she came, because she had been found in the United States in violation of the Immigration Act of February 5, 1917, to wit, that she was a person likely to become a public charge at the time of her entry.

The Immigration Act of February 5, 1917 (chapter 29, 39 Stat. 874 [Comp. St. §§ 4289¼a–4289¼u]), authorizes deportation within five years after entry of any alien who at that time of entry was a member of one or more classes excluded by law. It is argued that the appellant at the time of her entry in June, 1920, was likely to become a public charge, within the meaning of section 3 of the said Act of February 5, 1917 (Comp. St. § 4289¼b), because of her loose moral standards and character, as evidenced by her conduct subsequent to entry. The appellant in her testimony established that at the time of her arrest she was working as a maid in a gainful occupation, and not living with the man in question. She denies

any intention of living with him. Assuming it to have been established that the appellant did have such improper relations, the prospect of her becoming a public charge is indeed remote and conjectural. Such conjecture or speculation would establish a rule that might endanger the continued residence of any immigrant. An immigrant might enter the country and be a failure in business or in securing gainful occupation, and by the same token it might be reasoned that he or she would be likely to become a public charge. It is possible that the appellant might so demean herself as to come in conflict with the criminal laws, but we may not say that this is probable.

In Howe v. United States ex rel. Savitsky, 247 F. 292, 159 C. C. A. 386, a naturalized citizen of Canada, who was physically fit, after regularly obtaining a passport to enter the United States, was thereafter confronted with the charge of having drawn a check while in Canada which proved to be bad, and which indicated fraud. He was ordered deported as a person likely to become a public charge at the time of his entry. He denied any dishonesty or the commission of an offense, and proved that he was earning a substantial salary in the United States. We held that he could not be deported as a person liable to become a public charge, or as one who had committed or attempted the commission of a crime involving moral turpitude. In referring to the provision in Immigration Law 1907, § 2 (Comp. Stat. 1916, § 4244), we said:

"The excluded classes with which this provision is associated are significant. It appears between 'paupers' and 'professional beggars.' We are convinced that Congress meant the act to exclude persons who were likely to become occupants of almshouses for want of means with which to support themselves in the future."

In Wallis v. United States, 273 F. 509, we held, referring to the provision that defines a person likely to become a public charge, that such an immigrant was one whom it may be necessary to support at public expense by reason of poverty, insanity and poverty, disease and poverty, and idiocy and poverty. A case of a person likely to become a public charge was before the Circuit Court of Appeals, Ninth Circuit, in Ex parte Hosaye Sakaguchi, 277 F. 913, where it was pointed out that an able-bodied Japanese woman with a fair education, with no mental or physical disability, and who was skilled as a seamstress and had a disposition to work and support herself, was not likely

to become a public charge.. In the case of Ex 'parte Castorelli Fralli v. Johnson, 295 F. 217, an alien, who became the subject of a charge of bigamy several years after his entry, was held not to be deported upon the ground that he was likely to become a public charge at the time of his entry. In Ex parte Mitchell (D. C.) 256 F. 229, which required the consideration of Act of February 5, 1917, a woman in good health and a nurse by occupation was found living in the house with a married man and was frequently in his company. She was said to be subject to a suit of alienation of affections, in which damages might be awarded against her which would leave her in poverty. There the District Judge released her on a writ of habeas corpus, pointing out that all of this claim was speculative, and, while possible, was remote and conjectural.

[2, 3] In the case at bar the appellant is 23 years of age, has been in the country now for 4 years, is in good physical condition, and by industry and frugality has saved a substantial portion of her earnings. She is now occupied as a maid in charge of two children, and proved herself to be, at the time of the suing out this writ, living a moral and useful life.. There is no evidence to support the commission, whose decision has been approved by the Secretary of Labor, that she was a person likely to become a public charge at the time of her entry into the country because of her conduct subsequent to entry. When the record shows that the Commissioner of Immigration exceeds his power, the alien is entitled to her release on a writ of habeas corpus. The conclusiveness of the decision of the immigration officials is conclusive upon the matters of fact. Gegiow v. Uhl, 239 U. S. 31; 36 S. Ct. 2, 60 L. Ed. 114. But, where there is no evidence upon which to base a finding of the fact, it is without legal support.

Order reversed.