Ex parte COSTARELLI.

FRALLI v. JOHNSON.

(District Court, D. Massachusetts. January 29, 1924.)

No. 2549.

1. Habeas corpus ⬥➡92(1)—Whether an order of deportation is supported by any evidence is determined by the court on habeas corpus.

While, in habeas corpus proceedings by an alien ordered deported, the findings of fact by the immigration authorities are binding on the court, it may consider the question whether there is any evidence to support the findings.

2. Aliens ⬥➡54—Order of deportation held not supported by any evidence.

Evidence that an alien became subject to charge of bigamy several years after his entry will not support an order for his deportation on the ground that at the time of his entry he was likely to become a public charge.

Habeas Corpus. Petition of Frank P. Fralli against John P. Johnson for writ to test legality of order for deportation of Antonio Costarelli. Writ granted.

⬥➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank P. Fralli, of Boston, Mass., for relator.
The United States Attorney, for defendant.

LOWELL, District Judge. Return on a petition for a writ of habeas corpus which was granted to test the legality of the order for deportation of Antonio Costarelli. Costarelli was allowed to enter the United States on August 23, 1920. In December, 1923, he was arrested and ordered deported. The facts on which the order is based are as follows:

Shortly after his admission to the United States Costarelli sent for his wife and two small children, and when they arrived he provided a home for them and lived with them till January 1, 1922. Subsequently he left his wife and children, and, posing as a single man, married another woman and went to West Virginia with her, remaining there three months. While there he sent back money for the support of his children. On his return from West Virginia he found that his first wife had been committed to an insane hospital and that his children were in the Home for Destitute Catholic Children. He then told his second wife the truth, and prevailed on her to receive his children, which she did, and continued to live with him and the children. Afterwards his first wife died, and he went through a second marriage ceremony with the second wife, with whom he was living at the time of his arrest. Since his entry into the United States he had supported himself, and at the time of his arrest was earning about $25 a week as a barber. The order for deportation was based on the finding that when he entered the United States he was likely to become a public charge.

[1, 2] Findings of fact by immigration authorities are binding on this court, but there is always the ultimate question whether there was any evidence to support the finding. Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938; Ex parte Mitchell (D. C.) 256 Fed. 229. The rule of law invoked in this case is that if a man is likely to be convicted for a criminal offense he may be found to be a person likely to become a public charge within the meaning of the Immigration Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b). I have great doubt as to the validity of such a rule, but, granting its soundness, there remains the question whether at the time he entered the country there was any likelihood of his becoming a public charge. I am referred to two cases: Ex parte Horn (D. C.) 292 Fed. 455; Ex parte Britten (D. C.) 293 Fed. 61. Neither of them is in point, as in each of them the alien was at the time of entry liable to conviction for a criminal offense. There is no evidence of that kind in this case.

The contention is that by his actions subsequent to his entry the alien has become liable to be convicted of bigamy, and therefore at the time of his entry he was likely to become a public charge. The absurdity of this contention is apparent. If the immigration authorities had been gifted with second sight and could have foreseen the future, they might then have known when he entered the country that the alien would be likely to commit bigamy in the future, and there-

fore was likely to become a public charge. There was nothing in his past conduct at that time which justified any such finding. This is another instance of the practice of immigration officials, of which, during my short tenure of judicial office, I have already had several examples, of ordering the deportation of aliens on frivolous charges, without consideration of their legality. The practice cannot be too strongly condemned.

I am of the opinion that there is not a scintilla of evidence to support the finding, and order that Costarelli be discharged from custody.