### WONG MON LUN v. NAGLE, Immigration Com'r.*

### No. 6005.

Circuit Court of Appeals, Ninth Circuit.
March 24, 1930.

J. H. Sapiro and O. P. Stidger, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

DIETRICH, Circuit Judge.

Appellant, a citizen of China, was first admitted to the United States from Canada on September 11, 1923, as a merchant. Soon thereafter, he contends, he entered business as a merchant at San Francisco and has

*Rehearing denied May 26, 1930.

maintained such status down to the present time. On May 21, 1927, he went to China for a temporary visit, and on his return, in April, 1928, he was admitted under a re-entry permit, issued to him at the time of his departure pursuant to the provisions of the Immigration Act of 1924 (section 10, 43 Stat. 158, 8 USCA § 210). As the result of an investigation made shortly thereafter, he was, on June 4, 1928, arrested for deportation under a warrant issued by the Secretary of Labor, and after hearings before the immigration authorities held in due course, he was ordered deported on the ground that his re-entry in 1928 was unlawful, in that his original entry in 1923 had been effected by means of a merchant's or section 6 certificate fraudulently procured. The reasoning of the immigration officers was and is that a re-entry permit, such as was given appellant in 1927, may be legally issued only to one who has been lawfully admitted. See 8 USCA § 210(b). This section confers authority upon the Commissioner General to issue such a permit only if he "finds that the alien has been legally admitted to the United States," etc. Subdivision (c) of section 13 of the Act of 1924 (8 USCA § 213) provides that: "No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a nonquota immigrant under the provisions of subdivision (b), (d), or (e) of section 204." 8 USCA § 204. The only one of these subdivisions of section 4 which has any possible relevancy is (b), wherein "an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad," is classified as a "nonquota immigrant."

Appellant's first contention is that the Department of Labor was without jurisdiction to order deportation, citing White v. Chin Fong, 253 U. S. 90, 40 S. Ct. 449, 64 L. Ed. 797; that is to say, if the legality of his presence in this country is to be challenged, the inquiry must be made in a judicial proceeding, and only a court and not an administrative officer has the power to order deportation. It is true the facts in the Chin Fong Case are not widely different from those exhibited by the record here, but the statutory law has undergone a material change. Chin Fong's last entry, after a temporary visit to China, was made in 1913 ([C. C. A.] 258 F. 849), and the question there was of his status and rights under the Chinese Exclusion Laws, particularly the Act of November 3, 1893 (see 8 USCA §§ 282, 289), the pertinent provisions of which were not affected by the Immigration Act of 1907.

United States v. Woo Jan, 245 U. S. 552, 38 S. Ct. 207, 62 L. Ed. 466. But section 14 of the Immigration Act of 1924 (8 USCA § 214) provides that: "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this subchapter to enter the United States, * * * shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title." And these sections of the Act of 1917 provided for deportation upon a warrant issued by the Secretary of Labor (8 USCA §§ 155, 156). And by section 38 of the Act of 1917 it was declared that the act should not be construed to repeal, alter, or amend the Chinese Exclusion Acts "except as provided in section 19 hereof." 8 USCA § 178.

It has been repeatedly held that under the Immigration Act of 1917 Chinese persons unlawfully in the United States could be deported under administrative proceedings. Ng Fung Ho et al. v. White (C. C. A.) 266 F. 765; Id., 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938; Hee Fuk Yuen v. White (C. C. A.) 273 F. 10; Chin Shee v. White (C. C. A.) 273 F. 801; White v. Chung Him (C. C. A.) 282 F. 612; Woo Shing v. United States (C. C. A.) 282 F. 498; Ng Leong v. White (C. C. A.) 260 F. 749; Lai To Hong v. Ebey (C. C. A.) 25 F.(2d) 714. True, in no one of these cases are the facts fully identical with the facts herein involved, but logically the principle recognized embraces the present case. And the Act of 1924 clarifies, if it does not enlarge, the former grant of such authority. See section 14 thereof (8 USCA § 214) as above set out, and sections 25 and 28 (8 USCA §§ 223, 224).

In discussing the question of jurisdiction, appellant rests his argument in part upon subdivision (6) of section 3 of the Act of 1924 (8 USCA § 203), excepting from the term "immigrant," as used in the act, an alien entitled to enter the United States solely to carry on trade under the provisions of an existing treaty of commerce and navigation. But that provision has to do with substantive rights, and not with the mode of enforcing them or with the tribunal in which such rights may be asserted or challenged. In the proceedings under consideration it was, of course, the duty of the Secretary of Labor to determine whether the appellant's status brings him within this clause. He has found that when appellant entered the United States in 1923 he was not a merchant and was permitted to enter under fraudulent rep-

resentations that he had such a status. It may be true that since he so entered he has been engaged in merchandising, but the term "merchant," as used in the treaty with China, is the definition of a status acquired in China and not after coming to the United States. Chin Fong v. Backus, 241 U. S. 1, 36 S. Ct. 490, 60 L. Ed. 859. And we have held that one who enters the United States fraudulently and unlawfully acquires no right from the occupation in which he afterwards engages during a residence thus unlawfully initiated and maintained. Kaichiro Sugimoto v. Nagle (C. C. A. 9, decided Feb. 17, 1930) 38 F.(2d) 207; Hurst v. Nagle (C. C. A. 9) 30 F.(2d) 346; Wong Fat Shuen v. Nagle (C. C. A. 9) 7 F.(2d) 611. Appellant seeks to distinguish this last case on the ground that the plaintiff there had entered "surreptitiously," but in legal effect there is no difference between an entry procured fraudulently and one made surreptitiously.

The second contention urged involves an inquiry into the facts. We cannot accept the view that the evidence is insufficient to support the finding of the immigration officials. It being conceded by the government that the section 6 certificate, regular upon its face, makes a prima facie case of rightful entry, that point we need not discuss. Choy Yuen Chan v. United States (C. C. A.) 30 F.(2d) 516. One Wong Mon Po or Poo was called as a witness by the government, and after he had given his testimony, which turned out to be unfavorable, it introduced an ex parte statement theretofore procured from him. At the argument the district attorney virtually conceded that the only legitimate purpose for which the statement could have been received was to impeach the witness, and that it can be considered only as neutralizing the testimony he gave and not as substantive evidence. Hence that point also may be passed without discussion. But with these concessions, we are still of the opinion that the finding that the certificate was procured and the entry made by fraud was warranted. The certificate (dated August 29, 1923) was obtained upon representations that appellant had been a merchant in Canton, China, for five years, from 1915 to 1920; that since August 15, 1921, he had been, and at the time of the application for the certificate he was, a partner in the merchandising concern known as Sam Yick Company at 531 Main street, Vancouver, B. C.; and that he had invested $500 in the business, the capital of which was $2,500. Accompanying his application for the certificate was a copy from the public records of what is known as a declaration of partnership, purporting to be signed by all the partners and bearing date August 31, 1921. If he is referred to at all in this instrument, he is named as Wong Mon Sin, with the statement that he was admitted into the partnership on August 15, 1921. Also with the application was filed an affidavit made by Wong Mon Poo, the head of this firm and the government witness above referred to, in which it was stated that appellant was sometimes known as Wong Mon Sin and was affiant's partner in the firm. But in giving evidence before the immigration authorities at later dates, March 1, 1927, March 28, 1928, and June 4, 1928, appellant repeatedly testified that he had never been known by the name of Wong Mon Sin and that he knew of no one by that name. It now appears that that name was borne by another man in Vancouver, engaged in the laundry business, who, as a witness in this proceeding, testified that he had never had any interest in the Sam Yick Company. Appellant further testified unequivocally that he did not join the firm on August 15, 1921, and stated, in his testimony given March 1, 1927, that he became a member in July or August, 1922, in his testimony of May 28, 1928, that the date was June or July, 1922, and in his testimony of June 4, 1928, that it was May or June, 1922; and he repeatedly testified that he had been a member "a little over one year." He further testified that the statement in the section 6 certificate that he had been a merchant in Canton, China, from 1915 to 1920 was untrue, that he had never lived in Canton, and that for about a year he had had a $200 interest in the Ah Jew Paper Company in that city but was never actively engaged in that business. His testimony touching the nature of his duties in the Sam Yick concern was to the effect that he was the bookkeeper. The record of the Canadian Controller of Chinese Immigration, of December, 1922, shows six partners in the Sam Yick Company, no one of whom bears appellant's name. The name of one is given as Wong Mon Sin with a $1,250 interest, the total capital being $12,500, and in this record Wong Mon Sin is described, not as the bookkeeper but as a "salesman," Wong Yew being designated as the bookkeeper. Furthermore, by comparison of numerous signatures of appellant it was shown to be highly improbable that he signed the declaration of partnership. The testimony, other than his own, offered by him to support his contention that he was a member of the Sam Yick Com-

'pany, is not very substantial. It thus appears to be conclusively shown that some of the material representations upon which the section 6 certificate was issued were untrue, and it is a fair inference that they were willfully made and that the certificate was fraudulently procured. That being the case, he was not entitled to the re-entry permit provided for by 8 USCA § 210(b) and cannot claim the protection of sections 213(c) and 204(b), or of 203(6), 8 USCA.

Affirmed.