UNITED STATES ex rel. SPINA v. KARNUTH, District Director of Immigration.

No. 1125.

District Court, W. D. New York.
June 5, 1933.

Lee & Otis, of Niagara Falls, N. Y., for relator.

Richard H. Templeton, U. S. Atty., and Willard R. Chamberlin, Asst. U. S. Atty., both of Buffalo, N. Y., for respondent.

KNIGHT, District Judge.

Relator entered the United States from Italy on June 7, 1923, on a passport viséed by the British consul for transit to Canada. He went to Canada, but returned about June 13, 1923, to this country without having a properly viséed passport entitling him to entry to the United States for permanent residence. On December 6, 1930, he left this country for a visit to Italy and returned April 11, 1932. Prior to his departure, he secured a re-entry permit valid for one year from the Department of Labor at Washington. This was presented at the time of his return; an extension of six months having been secured from the United States consul in Italy.

The alien was subsequently apprehended under a warrant charging that he was in the United States in violation of the Immigration Act of 1924, title 8 USCA § 213, in that at the time of entry he was a quota immigrant who was not in possession of an unexpired immigration quota visé. After a hearing, deportation was recommended, and a warrant therefor was issued by the Department.

The alien swore out this writ of habeas corpus contending that under section 210 (b) of the Alien Immigration Law, title 8 USCA, the issuance of a re-entry permit requires a finding that the alien has been legally admitted and has made application for the permit in good faith, and thus, since a re-entry permit was issued, the Assistant Commissioner of Immigration must have found, after examination of the record, that relator's entry was legal. Another contention by relator is that the inspector who allowed the entry from Canada in 1923 was an agent of the United States, and that the United States, in issuing the re-entry permit, ratified his act of admitting the relator, and thus has estopped itself to deny that the entry was legal. The government answers that neither the fact that the alien was able to pass the inspector when he entered in 1923 nor the fact that he was able to secure a re-entry permit can operate to make his entry legal.

Relator claims that the examining officer refused to admit into the record the application for the re-entry permit. The record of proceedings before the examining officer shows that the permit file, including the application for re-entry permit and other records pertaining to it, was received and examined by the attorney for relator, and that he examined the alien regarding such file. The file was not marked in evidence, and the attorney for the alien did not request that it be so marked.

The record shows that the alien's application for re-entry permit gave the following information: "I arrived on the SS Columbo at the Port of New York, on the 8th day of June, 1923, directly to Canada, where I remained only three days and I came to the United States via the Lower Arch Bridge, Niagara Falls, Ontario, on June 12, 1923. My exact name under which I was admitted to this country was Giuseppe Spina and I was examined at the Lower Arch Bridge at Niagara Falls, New York, by the Inspector of Immigration. I was destined to my brother-in-law, Francesco Spina, Niagara Falls, New York. My head tax was paid at the Port of New York on June 8, 1923." At the hearing the alien stated, however, that his head tax was actually paid in Naples at the time he procured his steamship ticket.

The alien's first entry was illegal, inasmuch as he was without a properly viséed immigration passport entitling him to admission for permanent residence in the United States, as required by presidential proclamation of August 8, 1918 (40 Stat. 1829), issued pursuant to section 1 of the Act of May 22, 1918 (40 Stat. 559 [22 USCA § 223]) the authority of which was continued by the Acts of November 10, 1919 (41 Stat. 353) and March 2, 1921 (41 Stat. 1217). That entry could not subsequently be legalized. It therefore follows that the re-entry permit was improperly issued, inasmuch as a legal entry could not be spelled out of an entry which was illegal when made. Section 210 (f) of the Alien Immigration Law, title 8 USCA, reads as follows: "A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning." Ex parte Di Stephano (D. C.) 25 F.(2d) 902, held under this section that a re-entry permit secured by an alien who came within an excluded class conferred no right of re-en-

try upon him, since depriving the Immigration Department of the right to question his admissibility when he returned would be giving to the permit an effect other than merely showing that the alien was returning from a temporary visit abroad.

Another case having facts somewhat similar to that at hand is United States ex rel. Orisi v. Marshall (C. C. A.) 46 F.(2d) 853, where it was held that relator had failed to sustain the burden placed upon him of proving that he was in the United States lawfully and was entitled to a re-entry permit. There, despite the fact that he was re-admitted under the re-entry permit, the warrant of deportation was upheld. United States ex rel. Lesto v. Day, 21 F.(2d) 307, is a decision by the Circuit Court of Appeals for the Second Circuit bearing on the question. Relator, after having been away from this country for two years, came back to make arrangements for bringing his family to this country. He came as a temporary visitor, and consequently was not entitled to the re-entry permit which he secured. On his return less than a year later, it was held that "the Board of Special Inquiry was justified in investigating his claim that he was returning from a temporary visit abroad," and the warrant of deportation was sustained. It should be noted that the court found it unnecessary to decide whether or not the re-entry permit was secured by fraud. United States ex rel. Iodice v. Wixon (C. C. A.) 56 F.(2d) 824, cited by relator, is distinguishable from the case at bar, for there the same court found that the alien's original entry had not been proven illegal. See, also, United States ex rel. Lamp v. Corsi (C. C. A.) 61 F.(2d) 964; Cosulich Societa Triestina Di Navigazione v. Elting (C. C. A.) 64 F.(2d) 95.

Similarly, readmission certificates issued under the Chinese Exclusion Laws have been held to have no binding effect as adjudications of the right to return. In Wong Mon Lun v. Nagle (C. C. A.) 39 F.(2d) 844, 847, the court found that the appellant was originally admitted to the United States on a merchant's certificate illegally procured, and, "that being the case, he was not entitled to the re-entry permit." Therefore he was not entitled to re-enter, and a warrant of deportation was upheld. See, also, Nagle v. Lim Foon (C. C. A.) 48 F.(2d) 51; Hee Fuk Yuen et al. v. White (C. C. A.) 273 F. 10; Hom Yuen v. United States (C. C. A.) 214 F. 57.

Relator's entry in 1923 having been found illegal, and it having been further found that the re-entry permit was improperly issued and did not entitle the alien to re-enter the United States without an immigration quota visé, with which he was not provided at the time of his re-entry, no error of law was committed in the course of deportation proceedings. There is no question but that the relator was given a fair hearing and that there is evidence to sustain the charge on which the deportation warrant is based. The writ is therefore dismissed.