### Ex parte KICHMIRIANTZ.

(District Court, N. D. California, First Division. July 13, 1922.)

No. 17559.

Aliens ⬅53—Insane alien, kept at expense of relatives, not "public charge."

The words "public charge," as used in Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj) mean a money charge on, or an expense to, the public for support and care, and where the state receives from relatives of an insane alien what it has fixed as an adequate compensation for his support and care he is not a public charge, within the meaning of the act.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Charge.]

Habeas Corpus. Petition for writ on behalf of Archavir Kichmiriantz, sometimes known as Archavir Kishmirian. On demurrer to petition. Demurrer overruled, and writ granted.

McGee & Sapiro and W. H. Wylie, of San Diego, Cal., for petitioner.

John T. Williams, U. S. Atty., and Ben. F. Geis, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

DOOLING, District Judge. The detained, a young Armenian, is held upon a warrant of deportation on the grounds that he has become a public charge within five years after his entry into the United States from causes not affirmatively shown to have arisen subsequent to landing, and that he was a person likely to become a public charge at the time of his entry. At the hearing on the demurrer it was admitted by the government that the latter ground was not insisted on.

The first ground arises from the fact that the detained was committed to the Stockton State Hospital for the insane within five years after his admission to this country, and that one of the physicians there certified that he was afflicted with dementia præcox, and that this is a disease that has its beginning in youth, and that the patient's conduct and behavior is indicative that it is a chronic mental disorder, and due to causes existing prior to landing in the United States.

If the mere committing of detained to the State Hospital ipso facto makes him a public charge, without consideration of the question as to whether or no he is actually a charge upon the public, the order of deportation is amply supported and cannot be interfered with. But the law of California provides that the costs of the proceedings in examining an insane person are a charge upon his estate, and upon those liable for his maintenance, and also provides that the father and mother of an insane person shall be liable for the care, support, and maintenance of any insane person in a state hospital for the insane to which he may be committed or transferred. The father and mother, and indeed all of the relatives, of the detained, reside in this state. The record is silent as to whether these expenses were borne by the

persons liable therefor while the detained was actually in the asylum, but in the absence of any affirmative showing to the contrary it must be presumed that they were borne by the responsible persons as the law requires, and that he was there as a pay patient. The record, however, does disclose the fact that the detained is now and has been for some time in a private sanatorium, and that the expense of his care and maintenance is borne by his relatives.

I am of the opinion that the words "public charge," as used in the Immigration Act (Act Feb. 5, 1917, § 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), mean just what they mean ordinarily; that is to say, a money charge upon, or an expense to, the public for support and care; and when the state receives from the relatives what it has fixed as an adequate compensation for such support, I do not think the individual so cared for is a public charge, within the meaning of the act. The record shows that according to the latest report of the physician:

"The physical condition of the above named alien is such that he is able to travel without danger to life. As to his mental condition, he has to be fed, dressed, and undressed by the attendants and taken to his quarters. I feel that if he was deported, where he has no one to look after him, it would certainly mean that he would starve to death within a short time, as he is unable to care for himself in any way."

The department recognized the hardships presented, but felt that under its interpretation of the law deportation is the only thing possible. I cannot agree with that conclusion. It does not appear that the detained has as yet become a public charge, and until he does become such deportation must be stayed.

The demurrer will therefore be overruled, and the writ will issue as prayed for, returnable on July 18, 1922, at 10 o'clock a. m.