# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**NOCCHI v. JOHNSON, Commissioner of Immigration.**

(Circuit Court of Appeals, First Circuit. June 12, 1925.)

No. 1788.

1. **Aliens ⬤�ube54—Alien may be deported, if proceeding is commenced within five years.**

Under Immigration Act 1917, §§ 19, 20 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼jj, 4289¼k), construed together, an alien subject to deportation within five years after entry may be deported, if proceeding is instituted within the five years, though not concluded until after the expiration of that time.

2. **Aliens ⬤⟫53—Boy held not subject to deportation as public charge, where his parents were able and willing to pay for his maintenance.**

The fact alone that an alien boy, within five years after his entry, was sent to a state school for defective children, where he was maintained at public expense, is not ground for his deportation as having become a public charge within the five years, where his parents were able to pay for his support and education, and liable therefor under the laws of the state, and especially where they were willing to pay, but did not understand that they should do so.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Petition, on the relation of Aldo Nocchi, against John P. Johnson, Commissioner of Immigration, for writ of habeas corpus. Writ denied, and relator appeals. Reversed and remanded, with directions.

Nunziàto Fusaro, of Worcester, Mass., for appellant.

George R. Farnum, of Boston, Mass. (Harold P. Williams, of Boston, Mass., on the brief), for appellee.

6 F.(2d)—1

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a habeas corpus petition, filed April 14, 1923, to prevent the deportation of Aldo Nocchi, ordered on the ground that he is a mental defective and had become a public charge within five years after his entry into the United States from causes not affirmatively shown to have arisen subsequent to his entry, and that he was a person likely to become a public charge at the time of his entry.

The record is unusual, and there has been failure to discern and present the real issue.

The boy, Aldo Nocchi, was born in Italy on March 1, 1906, and landed in Philadelphia with his parents September 17, 1913. In 1916 he was sent to the Wrentham State School for Defective Children and at public expense. On this ground a warrant of deportation was issued on April 11, 1916. For some reason this warrant was not executed. At a later hearing on October 4, 1917, his mother testified:

"Q. 14. Do you feel that you could show, if you had counsel, any further reason why your son should not be deported after he had become a public charge? A. It was all a mistake; my boy is all right, but he would not go to school. I was told this was a college, and he would get a good education. We are willing to pay and can pay."

A second warrant of deportation was issued on January 26, 1918, but was held up pending further examination as to Nocchi's mental status. A third warrant on the same ground was issued on January 24, 1922, but, because the boy had disappeared,

it was not served until April, 1923. Service of this warrant was followed by the present habeas corpus proceeding.

The only question presented to the court below was as to the right to deport on proceedings initiated within five years, but not completed by actual deportation until after five years. On this point counsel urged the rule laid down by the Circuit Court of Appeals for the Third Circuit in Hughes v. Tropello, 296 F. 306.

[1] We concur with the court below in following the construction of the statute adopted by the Court of Appeals for the Second Circuit in United States v. Tod, 297 F. 385, in which Judge Mayer's learned and elaborate opinion fully covers the question. Manifestly, if deportation proceedings must be ended, and not merely begun, within the five years period, the immigration authorities would frequently be constrained to hasty, drastic, even cruel, procedure, in order to avoid failure in their duty to obey the statute.

[2] But in a supplemental brief the appellant's counsel has now directed our attention to a legal defect in the proceedings, overlooked by the immigration authorities, and not brought to the attention of the court below. It was assumed that the boy's commitment to the Wrentham School at public expense, without more, was enough, disregarding the crucial fact that his parents were financially responsible and legally liable for his support and education. See G. L. Mass. c. 117, §§ 6–15. Compare, also, G. L. c. 123, § 74.

Congress never intended that an unfortunate alien defective child or insane wife, committed to a state institution for curative treatment, having, respectively, parents or husband financially able to pay all proper charges, should thereby become pauperized, "a public charge," and on that ground deported. Compare United States v. Tod (D. C.) 300 F. 913, affirmed (C. C. A.) 300 F. 918; Ex parte Kichmiriantz (D. C.) 283 F. 697.

It must not be overlooked that the rights we are now dealing with are rights of this boy. It was the legal duty of his parents, being able, to support and educate him. It was also the duty of the officers of the commonwealth of Massachusetts to collect proper charges for his support and training in the Wrentham School, even if the parents were unwilling to pay these charges. Failure by his parents, or by the officers, or by both, in this duty, does not subject the boy to the penalty of deportation.

But it should be added that the record is far from clear that there was any intentional refusal by the parents to do their duty. The mother expressly testified that "Miss Dixon, of the school department, advised sending him to Wrentham, which advice we followed." And later, as quoted above, referring to his having become a public charge, she said: "It was all a mistake; my boy is all right. * * * I was told this was a college, and he would get a good education. *We are willing to pay, and can pay.*"

We find nothing in the record to control this direct evidence.

The record also shows that the boy's family is now industrious and thrifty, and have accumulated residential and renting property valued at $19,000, in which they have a substantial equity; that they have an income of about $45 a week. Besides, there is no clear showing that the boy is so feeble-minded that he is not able to earn his own living. At 10 years of age he could write his name, and there is at least an implied claim that he is capable of self-support in manual labor. At any rate, the present order of deportation is based, not on prophecy as to his becoming a public charge in the future, if his interested relatives should die, leaving him unprovided for, and if he should then be incompetent, but upon the erroneously assumed fact that he had within five years actually and in law become a public charge, because sent to the Wrentham School. At most, the record indicates a misunderstanding between the authorities and the parents on the point, probably immaterial, of their willingness to pay the boy's expenses. But it is clear that they were able to pay, and we hold that, being able to pay, failure on their part, either inadvertently or intentionally, was not, as matter of law, enough to make the child a public charge within the meaning of the statute.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to enter an order sustaining the writ and discharging the appellant.