**UNITED STATES ex rel. DE SOUSA v. DAY, Immigration Com'r.**

Circuit Court of Appeals, Second Circuit.
November 14, 1927.

No. 68.

1. Aliens ⚖46—By promulgating rule authorizing admission of alien children coming to relatives, Secretary of Labor exercised statutory discretion (Immigration Rule 3, subd. N, par. 1; Immigration Act 1917, § 3 [8 USCA § 136]).

By promulgating Immigration Rule 3, subd. N, par. 1, of July 1, 1925, authorizing admission of infant aliens who have not been objects of public charity, and neither accompanied by nor coming to parents but coming to near relatives, able and willing to support and educate them, Secretary of Labor exercised the discretion conferred on him by Immigration Act 1917, § 3 (8 USCA § 136), to admit children under 16 unaccompanied by or not coming to parents, if otherwise eligible, if they are not likely to become a public charge.

2. Aliens ⚖49—That agreement of infant alien's uncle to educate him until he reached 16 was unenforceable held no ground for excluding alien (Immigration Act 1917, § 3 [8 USCA § 136]; Immigration Rule 3, subd. N, par. 1).

Under Immigration Act 1917, § 3 (8 USCA § 136), giving Secretary of Labor discretion to admit children under 16, unaccompanied by or not coming to parents, if otherwise eligible, and not likely to become a public charge, and Immigration Rule 3, subd. N, par. 1, of July, 1925, where alien, whose passage was paid by uncle in United States, who agreed to send him to school until he became 16, was neither accompanied by nor coming to a parent, the only questions for the Board of Special Inquiry were the alien's physical and mental conditions, freedom from prior pauperism, and uncle's ability and willingness to keep his promise to care for and educate him, and fact that uncle was under no legal obligation to render assistance was no ground for exclusion.

3. Aliens ⚖54(7)—Burden of proving that infant immigrant did not belong to any of excluded classes held on immigrant (Immigration Act 1924, § 4 [8 USCA § 204]).

Burden of proving that infant immigrant coming from nonquota country under Immigration Act 1924, § 4 (8 USCA § 204), did not belong to any of the excluded classes, held on such infant immigrant.

4. Aliens ⚖54(9)—Evidence held to sustain burden on infant immigrant of showing he was not likely to become public charge (Immigration Act 1917, § 3 [8 USCA § 136]; Immigration Rule 3, subd. N, par. 1).

Proof that infant immigrant, nearly 16 years of age, neither accompanied by nor coming to a parent, was coming to an uncle, who paid his passage, was earning $4.50 a day, had savings of $500, and had agreed to send him to school until he was 16, held to sustain burden on immigrant of showing that he did not belong to any of the excluded classes, and was not likely to become a public charge, under Immigration Act 1917, § 3 (8 USCA § 136), and Immigration Rule 3, subd. N, par. 1, of July 1, 1925.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Hector De Sousa, against Benjamin M. Day, Commissioner of Immigration of the Port of New York. From an order dismissing the writ, and remanding relator to the custody of the Commissioner, relator appeals. Reversed, and writ sustained.

The relator was born in Para, Brazil, on January 2, 1911. He arrived at the port of New York on the steamship Sheridan, on December 14, 1926; two days later was brought before a Board of Special Inquiry at Ellis Island, given a hearing, and thereupon excluded as being under 16 years of age, arriving here unaccompanied by either parent, neither of whom were in the United States, and likely to become a public charge. From this decision he appealed to the Secretary of Labor, who affirmed the excluding decision of the Board of Special Inquiry and ordered the relator deported. A writ of habeas corpus was thereupon sued out, and from the order dismissing the same after a hearing thereon this appeal was taken.

The passage of the alien was paid for by an unmarried uncle, who was a workman for the Bethlehem Steel Company, receiving wages of $4.50 per day, and having savings of $500. The uncle informed the board that he would see that his nephew did not become a public charge and that he would send him to school until he was 16 years of age. The immigrant exhibited a nonquota immigration visa issued at Para, Brazil, on September 22, 1926, and came from a nonquota country. Immigration Act of 1924, § 4 (8 USCA § 204).

Immigration Act of 1917, § 3 (8 USCA § 136) provides:

"That the following classes of aliens shall be excluded from admission into the United States: * * * Persons likely to become a public charge; * * * persons whose tickets or passage is paid for with the money of another, or who are assisted by others to come, unless it is affirmatively and satisfactorily shown that such persons do not belong to one of the foregoing excluded classes; * * * all children under sixteen years of age, unaccompanied by or not coming to one or both of their parents, except that any such children may, in the discretion of the Secretary of Labor, be admitted if in

his opinion they are not likely to become a public charge and are otherwise eligible. * * * "

Immigration Rule 3, subd. N, of July 1, 1925, provides:

"Paragraph 1. Children under 16 unaccompanied by or not coming to one or both of their parents may be admitted on primary examination when the immigration officer is satisfied (a) that they are in good mental and physical condition; (b) that while abroad they have not been the objects of public charity; (c) that they are going to near relatives who are able and willing to support and properly care for them; (d) that it is the intention of such relatives to send such children to day school until they reach the age of 16; and (e) that they will not be put at work unsuited to their years; or (a) that the child is to attend a designated reputable institution of learning for which suitable provision has been made in advance; or (b) that the child is merely in transit and the person accompanying such child will convey him through and out of the United States; or (c) that the child is to make a temporary visit to his relatives."

Gaspare M. Cusumano, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Alvin McKinley Sylvester, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The alien in this case was neither accompanied by nor coming to a parent, and was slightly under 16 years of age. Section 3 of the act of 1917, supra, providing that the alien "may, in the discretion of the Secretary of Labor, be admitted if in his opinion" he is "not likely to become a public charge and" is "otherwise eligible," is therefore applicable.

The Secretary of Labor exercised his discretion by rule 3, subdivision N, and we can see no reason why he should not exercise it in such a way. The Secretary doubtless might, under the statute, have treated the case of each immigrant as wholly independent, but he also might make a fair classification by rule, and a rule that an unaccompanied alien of sound mind and body, who had not been an object of public charity, might be admitted when coming to near relatives able and willing to support, educate, and care for him, seems to be reasonable.

The alien fulfilled all the requisites of the rule, unless there was some basis for a finding by the department that the uncle was not able and willing to support and properly care for him. The alien's uncle had taken enough interest in him to pay his passage to the United States and to agree that he should not become a public charge and should attend school during the short time that would elapse before reaching the age of 16 years. There is no evidence that this promise, though legally unenforceable, was not made in good faith, or that the uncle was unlikely to be able and willing to fulfill it. While he had not large savings, he had $500 laid by, and was earning $4.50 per day, and had no wife or children dependent upon him.

In the case of Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114, certain Russian immigrants arrived at the port of New York, knowing no trade, having no one under any legal obligation to support them, and having only about $25 in cash apiece. Only one of them could read or write in his own language, and none of them could speak English. They were excluded by the department because likely to become public charges. They sued out their writs of habeas corpus, and the return to the writs alleged that they were "likely to become public charges for the following, among other, reasons: "That they arrived here with very little money ($40 and $25 respectively) and are bound for Portland, Oregon, where the reports of industrial conditions show that it would be impossible for these aliens to obtain employment; that they have no one legally obligated here to assist them; and upon all the facts, the said aliens were * * * duly excluded." The District Court (211 F. 236) as well as this court (215 F. 573), dismissed the writs; but the Supreme Court reversed the orders, and sustained the writs, in an opinion by Justice Holmes, representing the unanimous decision of the court. His opinion was based upon the ground that an alien could not be excluded "because the labor market of the United States was overstocked." The facts in the Gegiow Case seem to have been at least as strong to justify exclusion as those here. The persons there, though adults, had no savings worth mentioning, no apparent means of securing employment, and no persons under legal obligation to support them to whom they could turn. In the face of that case it is hard to say that a healthy adult immigrant, with no previous history of pauperism, and nothing to interfere with his chances in life but lack of savings, is likely

to become a public charge within the meaning of the statute.

[1] The Immigration Act places children under 16 years of age, unaccompanied by or not coming to one or both parents, in the excluded classes, "except that any such children may in the discretion of the Secretary of Labor be admitted if in his opinion they are not likely to become a public charge and are otherwise eligible."

By the rule the Secretary has promulgated he has exercised the discretion conferred by the statute, and in substance has expressed his opinion that a child in good mental and physical condition, who comes to near relatives, able and willing to support and properly care for him, is not likely to become a public charge, even though unaccompanied and under 16 years. Otherwise the rule would not have made such children admissible. In a sense the rule substitutes the ability of the near relative, who is willing to help an immigrant child of sound mind and body, for the earning capacity which should ordinarily be discovered in an adult immigrant, to prevent the latter from being excluded as likely to become a public charge. Can it be thought that, if the uncle here had landed with a wife or child, he could have been excluded because likely to become a public charge? The answer, in view of the Gegiow Case, must certainly be "No." Any other would exclude a large number of immigrants ordinarily admitted. See Ex parte Mitchell (C. C. A.) 256 F. 229, Wallis v. United States ex rel. Mannara (C. C. A.) 273 F. 509, Ex parte Hosaye Sakaguchi (C. C. A.) 277 F. 913, and In re Keshishian (D. C.) 299 F. 804.

[2] It is contended that under the decisions of this court in United States ex rel. Smith v. Curran (C. C. A.) 12 F.(2d) 636, and United States ex rel. Azizian v. Curran (C. C. A.) 12 F.(2d) 502, ability and willingness of the uncle to care for the immigrant should not be taken into account, because he was under no legal obligation to render assistance. It is to be noted that each of these decisions was by a divided court on the question whether the immigrant was likely to become a public charge, and that in the first case no immigrant under 16 years of age was involved. In the Azizian Case, while the court did avert to the fact that the uncles of the immigrant were under no legal obligation to support her, the decision did not turn upon this consideration, for the court said: "Their resources for so doing seem to us, and evidently seemed to the Board of Inquiry, meager, to say the least." Moreover, in that case the infant immigrant came with her mother,

and was not, therefore, "unaccompanied"; so that the rule did not apply to the situation. In other words, the ability of the mother and child to avoid becoming public charges, and in that connection both their resources and earning capacity and the question whether relatives who were under no legal obligation to support them should be relied upon to render assistance, if needed, were all matters open for consideration by the Board of Inquiry. Here the only questions for the board under the rule were the mental and physical condition of the immigrant, his freedom from a prior history of pauperism, and the ability and willingness of the uncle to keep his promise to care for and educate the immigrant. If there was adequate proof of this, the fact that the uncle was under no legal obligation to render assistance was no ground of exclusion, for the rule made proof of his willingness and ability sufficient basis for admission. In cases outside of the application of the rule, the Board of Inquiry might well consider whether promises of support from relatives under no legal obligation to render any should have any considerable weight in situations where the ability of an immigrant to maintain himself was not entirely clear. Neither of the foregoing decisions related to cases within the rule, and neither, therefore, is pertinent to the present facts.

The decision of the Circuit Court of Appeals for the Third Circuit in United States ex rel. Berman v. Curran, 13 F.(2d) 96, is, however, directly in point. There two unaccompanied immigrants, each under 16 years of age, came to this country destined to a relative who had paid for their passage, declared his willingness to care for and educate them, and was amply able to fulfill his promise. They were excluded by the Board of Inquiry because they were "children under 16 years of age unaccompanied by and not coming to one or both of their parents." They thereupon sued out their writs of habeas corpus, which were sustained, both in the District Court and upon appeal. The Circuit Court of Appeals held that, "in view of their full qualification for admission under rule 6 promulgated by the Department of Labor," their exclusion was "an abuse of discretion because of a failure to exercise discretion, and therefore unlawful." The court in substance held (1) that the board should have passed upon the qualifications of the uncle under the requirements of the rule; (2) that, while it had failed to do this, yet, inasmuch as the record showed that he was fully qualified, the aliens must be admitted, and the writs sustained. The only difference

between the Berman Case and the present one is that the relative there was more well-to-do than the uncle here; but that is a matter of degree, and we regard the proof ample that the uncle here was able and willing to care for and educate the immigrant.

[3, 4] It is true that the burden was upon the immigrant to show that he did not belong to any of the excluded classes. But we find that he has met the burden by showing that he was destined to an uncle who was able and willing to care for and educate him. In view of this proof, rule 3 made it unlawful to treat the fact that the uncle was not under legal obligation to assist the alien as a ground of exclusion.

The order dismissing the writ of habeas corpus should therefore be reversed, and the writ sustained.