## Ex parte ORZECHOWSKA.
### No. 13047.

District Court, D. Oregon.

May 9, 1938.

Barnett H. Goldstein, of Portland, Or., for petitioner.

J. Mason Dillard, Asst. U. S. Atty., of Portland, Or., for Divisional Director.

McCOLLOCH, District Judge.

Luba is an unmarried Polish girl of Jewish blood and orthodox Jewish faith, who came to this country in December, 1934. She was twenty years old at the date of entry. Her father and mother are deceased and her nearest relative in Poland is her grandfather, past ninety years of age and himself a dependent. Luba was brought to this country by her father's brothers, Harry Jackson and Abe Jackson, to make her home with them. The Jacksons have prospered in the fur and hide business.

The girl was in good health at the time of her entry and was so certified by the Immigration Service. Shortly after her arrival she suffered a nervous breakdown. For a time she was treated in the private sanitarium of Dr. D. C. Burkes at Portland, Or., the uncles paying the bills.

Dr. Burkes suggested that Luba could be better cared for at the Oregon State Hospital, recognized as one of the outstanding public institutions for the care of mental cases in the country. Since June 15, 1935, she has been at the State Institution, and her case is now thought to be incurable. While at the State Hospital her uncles and her cousin, son of one of the uncles, have left sums of money to be applied toward the girl's care, but they have not paid the full cost to the State of the girl's keep and treatment, due, they claim, to a misunderstanding. The uncles now offer to pay the State the full unpaid balance of its charges, and to guarantee full payment hereafter, so long as their niece shall remain a State patient.

On September 20, 1937, the Department of Labor issued a warrant for the girl's deportation on the following grounds: (1) That she was a person likely to become a public charge at the time of entry; (2) that she became a public charge within five years after her entry in the United States from causes not affirmatively shown to have arisen subsequent thereto; (3) that she had one or more attacks of insanity previous to her entry.

A hearing was had and deportation ordered.

■ The Government justifies the intended deportation under 8 U.S.C.A. § 155, which reads: " * * * any alien who within five years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing [shall be deported] * * *."

The Government also relies on the charge of insanity previous to entry.

To my mind, the girl is not a public charge within the meaning of the statute and the decisions. Wallis v. United States ex rel. Mannara, 2 Cir., 273 F. 509, 511; United States ex rel. Berman v. Curran, 3 Cir., 13 F.2d 96. Compare Ex Parte Kichmiriantz, D.C., 283 F. 697; Nocchi v. Johnson, 1 Cir., 6 F.2d 1; United States ex rel. Papa v. Day, D.C., 45 F.2d 435, 436(2).

The Jacksons have satisfied me that their failure to pay the full amount of the cost of keeping the girl at the Oregon State Hospital was due to a misunderstanding, and I am further satisfied that they will keep their word and pay all charges in the future.

■ One of the grounds alleged for deportation is that the girl had one or more attacks of insanity previous to her entry into the United States, but the record offers no legal proof of this charge. See Lisotta v. U. S., 5 Cir., 3 F.2d 108. Compare U. S. v. Tod, U. S. ex rel. Brugnoli v. Tod, 2 Cir., 300 F. 918.

I am very glad that the record does not compel the inhumanity of returning this demented girl to a land at present so inhospitable to those of her blood and faith. News dispatches indicate that further early "Aryan conquests" by Hitler and Goering may be expected, and Poland is named as one of the countries fated for a "Nordic purge" of the sort lately visited on Austria. Should this occur, one could easily imagine the fate of this unfortunate girl, upon being returned to the land of her birth.

I hold the Immigration Service in the highest regard, but the Service should, it seems to me, be sure of its ground and of the necessity for deportation of Jewish people in these days of renewed persecution of their race, and the Service should not be unmindful of President Roosevelt's recent restatement of this nation's historic policy of sanctuary for the stricken and oppressed.

An order will be entered accordingly.