Hilario **PEREZ**

v.

Janet **RENO**, **Attorney General of the United States and the United States Immigration and Naturalization Service.**

No. EP–98–CA–214–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 25, 1998.

Scott E. Segall, El Paso, Texas, for plaintiff/petitioner.

James W. Blagg, U.S. Attorney, Western District of Texas, Frank W. Hunger, Assistant Attorney General, Civil Division, Guadalupe R. Gonzalez, Special Assistant U.S. Attorney, El Paso, Texas, Christopher C. Fuller, Senior Litigation Counsel, Alison Marie Igoe, U.S. Department of Justice, Civil Division, Washington D.C., Amy Brice, of Counsel, Assistant District Counsel, Im-

migration and Naturalization Service, for defendant/respondent.

## *MEMORANDUM OPINION AND ORDER*

BRIONES, District Judge.

On this day, the Court considered the Defendants' (collectively, "INS") Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed on July 2, 1998, in the above-captioned cause. The Court conducted a hearing on the matter on July 2, 1998. Plaintiff filed his Response on July 13, 1998. The INS thereafter filed its Supplemental Opposition to Request for Preliminary Injunction on July 23, 1998. After due consideration, the Court is of the opinion that the matter should be resolved as follows.

## FACTS

Plaintiff Hilario Perez ("Perez") is a 58–year–old native and citizen of Mexico. He was admitted to the United States on June 11, 1974, as a lawful permanent resident alien. On December 14, 1994, he was convicted in the District Court of Winkler County, Texas, for the offense of aggravated assault and was sentenced to five years confinement in the Texas Department of Criminal Justice. As a result of that conviction, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Perez by way of an Order to Show Cause, which charged Perez with being deportable as an alien convicted of an aggravated felony after being admitted under § 241((a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C.A. § 1251(a) (transferred to § 1227) (West Supp.1998)

In the course of the deportation proceedings, Perez admitted deportability and applied for relief from deportation under INA § 212(c), as amended, 8 U.S.C.A. § 1182(c) (West Supp.1998) ("INA § 212(c)"). The INS moved to pretermit Perez's application for relief under INA § 212(c) due to amendments to that section of law which rendered Perez ineligible to apply because of his status as an aggravated felon. The immigration judge overruled the INS' motion to deny

relief and granted Perez's relief by order dated July 23, 1996.

The INS appealed the grant of relief to the Board of Immigration Appeals ("BIA"). The BIA sustained the appeal, finding Perez statutorily ineligible for INA § 212(c) relief from deportation. The BIA, however, allowed the reopening of the case before the immigration court for the purpose of re-examining Perez's deportability since he may have admitted and conceded his deportability in reliance on the availability of INA § 212(c) relief.

During the reopened proceedings before the immigration court, the immigration judge adopted her prior decision granting Perez INA § 212(c) relief from deportation despite the ruling by the BIA. The INS appealed this second decision. The BIA sustained the INS appeal and ordered Perez deported to Mexico in a decision dated May 28, 1998. The BIA found that the immigration judge exceeded her authority in granting Perez's relief under the precedent decision by the Attorney General in *Matter of Soriano*, Interim Decision 3289 (A.G. Feb. 21, 1997).

Perez filed the instant lawsuit on June 18, 1998, some 21 days after the BIA decision, seeking a mandamus and injunctive relief. Perez did not seek direct appeal to the Fifth Circuit Court of Appeals. Perez currently is not being held in custody of the INS.

## DISCUSSION

Perez filed the instant action seeking declaratory relief that the Illegal Immigration Reform and Immigration Responsibility Act, Pub.L. No. 104–208, Div. C, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRIRA"), or the Anti-terrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") are unconstitutional as applied to him. In his complaint, Perez charges that the procedures being used to deport him amount to a bill of attainder or an ex-post facto law and fail to afford him equal protection of the law. He avers that the Court has jurisdiction to entertain his complaint pursuant to 28 U.S.C.A. § 1331 (West 1988) (federal question), 8 U.S.C. § 1105a

(repealed 1996), and Article I, section 9,[1] and the Fourteenth Amendment to the United States Constitution.

Perez asserts that recent amendments to the INA and the AEDPA "which remove[ ] the power of the Immigration Judge to consider humanitarian reasons to deny deportation cannot be [sic] constitutionally be applied to the Plaintiff." Perez avers that the issue is governed by *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), arguing that the amendments were wrongfully applied retroactively to him. Perez further claims that he was not afforded the same rights as other similarly situated persons who were granted relief under INA § 212(c).

On the other hand, the INS maintains that the Court does not have jurisdiction over the cause, relying on the plain language of new INA § 242 and AEDPA § 440(d). The INS contends that Perez's claims should have been brought before the Fifth Circuit Court of Appeals under these recent amendments. The INS alternatively avers that even if the Court had jurisdiction to consider the merits of the matter at hand, Perez's complaint fails to state a claim for which relief may be granted. The INS reasons that AEDPA § 440(d) is not a bill of attainder or an expost facto law and that it does not violate equal protection.

Because the facts are not in dispute, the Court is faced with pure issues of law. The Court first will provide a brief review of the applicable statutory background. Next, the Court will address jurisdictional issues raised by the parties, including an analysis of the Court's scope of review. Finally, the Court will reach the statutory merits, ruling in favor of Plaintiff.[2]

 At the onset, the Court notes that it is guided by several canons of statutory construction, including some applying specifically to an immigration context. First, ambiguities in the law are to be interpreted in favor of the alien. *See, e.g., INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948). Second, restrictions on jurisdiction are to be read narrowly and courts will not assume jurisdiction is repealed unless the repeal is explicit. *See, e.g., McNary v. Haitian Refugee Center*, 498 U.S. 479, 483–94, 111 S.Ct. 888, 892, 112 L.Ed.2d 1005 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986). Third, the courts' jurisdiction over writs of habeas corpus will not be repealed by implication. *See Felker v. Turpin*, 518 U.S. 651, 660–61, 116 S.Ct. 2333, 2338–39, 135 L.Ed.2d 827 (1996). Lastly, the right to review is premised on the recognition that an alien subject to deportation enjoys constitutional rights. *See, e.g., United States v. Verdugo–Urquidez*, 494 U.S. 259, 270–71, 110 S.Ct. 1056, 1064, 108 L.Ed.2d 222 (1990); *Bridges v. Wixon*, 326 U.S. 135, 161, 65 S.Ct. 1443, 1455, 89 L.Ed. 2103 (1945) (concurring opinion).

### Statutory Background

The INA recently has undergone dramatic legislative changes, all aimed at restricting federal court jurisdiction over INS administrative decisions and adjudications. Specifically, Congress has taken steps to limit the federal courts' jurisdiction over petitions for habeas corpus involving INS matters. Toward this end, Congress first enacted the AEDPA on April 24, 1996. AEDPA § 401(e) eliminated the INA provision (§ 106(a)(10)) governing habeas corpus review of deportation proceedings.

Previously, INA § 106(a)(10) provided that, "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C.A. § 1105a(a)(10) (repealed 1996). AEDPA § 440(a), however, replaced

---

1. Article I, section 9, clause 2, of the Constitution ("Suspension Clause") provides in relevant part, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

2. The Court candidly admits that the issues raised in this cause were particularly challenging, due no less to the confusing state of applicable statutes and the conflicting body of controlling and instructive case law.

INA § 106(a)(10) with the following provision: "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D) [of the INA] ... shall not be subject to review by any court." 8 U.S.C.A. § 1105(a)(10) (West 1998). Furthermore, under INA § 212(c), criminal aliens could seek a discretionary waiver of deportation. AEDPA § 440(d), however, amended INA § 212(c) by adding the following language rendering criminal aliens found guilty of specific crimes ineligible for the waiver:

> [t]his section shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i).

Congress then enacted IIRIRA on September 30, 1996. IIRIRA repealed INA § 106 and replaced it with a new INA § 242 entitled, "Judicial Review of Orders of Removal." *See* IIRIRA § 306, codified at 8 U.S.C.A. § 1252 (West Supp.1998). In particular, IIRIRA § 306(a)(2)(C) replaced AEDPA § 440(a) and reads as follows: "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense...." INA § 242(a)(2)(C), 8 U.S.C.A. § 1252(a)(2)(C). IIRIRA also provides for transitional rules, discussed in greater detail below, which apply to persons in deportation proceedings commenced before April 1, 1997. *See* IIRIRA § 309. Additionally, IIRIRA § 306(a) creates a new INA § 242(g) ("new INA § 242(g)"), entitled "Exclusive Jurisdiction." 8 U.S.C.A. § 1252(g) (West Supp.1998). The new INA § 242(g) provides,

> [e]xcept as provided in this section and notwithstanding any other provisions of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence pro-

ceedings, adjudicate cases, or execute removal orders against any alien under this Act.

## Jurisdiction

■ The INS argues unpersuasively that both new INA § 242(g) and IIRIRA's transition provisions, specifically IIRIRA § 309(c)(4)(G), govern the court's subject matter jurisdiction over the matter at hand. The INS therefore contends that the Court lacks jurisdiction. The Court does not agree.

The effective date of IIRIRA's amendments is "the first day of the first month beginning more than 180 days after the date of enactment [September 30, 1996]" or April 1, 1997. IIRIRA § 309(a). At the same time, IIRIRA § 309(c) creates transitional rules delaying implementation of IIRIRA's amendments for aliens in exclusion or deportation proceedings before April 1, 1997. In addition, IIRIRA § 309(a) excepts §§ 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) from the general effective date. The effective date for new INA § 242(g) is found in IIRIRA § 306(c)(1). IIRIRA § 306(c)(1), as amended by technical corrections on October 11, 1996, Pub.L. 104–302, 110 Stat. 3656, 3657, provides:

> (c) EFFECTIVE DATE
> (1) IN GENERAL—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under section 309, *except that subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection(a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.*

(Emphasis added). Although this provision indicates that it applies retroactively, Congress failed to provide an effective date for new INA § 242(g). The question thus arises whether new INA § 242(g) was meant to take effect on the date of IIRIRA's enactment, as opposed to April 1, 1997. The Seventh Circuit resolved this issue in *Lalani v. Perryman*, 105 F.3d 334, 336 (7th Cir. 1997) (per curiam), where it ruled that new INA § 242(g) would not take effect until April 1, 1997—the general effective date pro-

vision. *But see Charan v. G. Schiltgen,* No. 96–3061, 1997 WL 135938, at *2 (N.D.Cal. Mar.18, 1997).

IIRIRA's transition provisions delay the implementation of IIRIRA's amendments governing judicial review, including § 306(a)(2)(C) (again, which provides in relevant part, "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense ..."). *See Turkhan v. INS,* 123 F.3d 487, 489 (7th Cir.1997) ("Section 309 of the II[RI]RA ... makes these new judicial review provisions inapplicable to aliens who are in deportation proceedings [before] April 1, 1997"); *see also Yang v. INS,* 109 F.3d 1185, 1191 (7th Cir. 1997) ("the II[RI]RA covers removal proceedings begun during or after ... April"). The transition provisions state in relevant part as follows:

> (c) TRANSITION FOR ALIENS IN PROCEEDINGS.—
>
> (1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before [April 1, 1997]—
>
> (A) the amendments made by this subtitle shall not apply, and
>
> (B) the proceedings (including judicial review thereof) *shall continue to be conducted without regard to such amendments.*
>
> \* \* \* \* \* \*
>
> (4) TRANSITIONAL CHANGES IN JUDICIAL REVIEW.—*In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [after October 30, 1996] notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act) to the contrary*—
>
> (G) there shall be no appeal in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in

effect on the date of enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

IIRIRA § 309(c) (emphasis added). The transitional rules govern judicial review in this cause, because Perez's deportation proceedings commenced before April 1, 1997, and the deportation order became final after October 30, 1996.[3] At the same time, because the transition rules only supersede contrary provisions of the pre-IIRIRA law, AEDPA § 440(a) of the AEDPA (INA § 106(a)(10)) would also apply. *See Turkhan,* 123 F.3d at 489.

█ If new INA § 242(g) applied to Perez along with the transitional rules, as the INS contends, it would render meaningless IIRIRA's specific provision governing jurisdiction for review of criminal alien deportations. *See* IIRIRA § 306(a)(2)(C). In addition, retroactive application of new INA § 242(g) would impede application of the related transition provision for aliens in deportation proceedings. *See* IIRIRA § 309(c)(4)(G). Basic statutory construction supports application of the specific IIRIRA provision because the specific takes precedence over the general. *See Resolution Trust Corp. v. Gallagher,* 10 F.3d 416, 420 (7th Cir.1993).

█ Additionally, a court is to give effect to all statutory provisions whenever possible. *See Moskal v. United States,* 498 U.S. 103, 109–10, 111 S.Ct. 461, 466, 112 L.Ed.2d 449 (1990). IIRIRA § 306(a)(2)(C), entitled "Orders Against Criminal Aliens," is located in a subsection of new INA § 242 entitled "Matters Not Subject to Judicial Review." The language of this subsection mirrors the language of new INA § 242(g). For instance, both provisions state that "notwithstanding any other provision of law, no court shall have jurisdiction." Just as new INA § 242(g) divests federal courts of jurisdiction over all judicial review of administrative decisions or actions of the Attorney General,

---

**3.** The INS concedes that the transitional rules apply to Perez.

IIRIRA § 306(a)(2)(C) also seems to deprive federal courts of all judicial review of criminal alien deportations under enumerated sections. If new INA § 242(g) also were applicable as the INS maintains, its application would render IIRIRA § 306(a)(2)(C) meaningless. The Court instead chooses to give full effect to IIRIRA § 306(a)(2)(C), and the related transition provision, IIRIRA § 309(c)(4)(G). *See Sabino v. Reno*, 8 F.Supp.2d 622, 633–34 (S.D.Tex.1998) (Lake, J.). *But see Goncalves v. Reno*, 144 F.3d 110, 118 (1st Cir.1998) (finding that new INA § 242(g) also applies in its facts where the alien was subject to the transitional provisions of IIRIRA, but also finding that new INA § 242(g) does not divest district courts of jurisdiction over statutory habeas corpus petitions); *Cholak v. U.S.*, No. 98–365, 1998 WL 249222, at *3–4 (E.D.La. May 15, 1998) (concluding that the transitional provisions are also subject to new INA § 242(g)).[4]

Even though the AEDPA and IIRIRA limit the jurisdiction of the courts, there remains the unsettled issue of whether district courts retain statutory and constitutional habeas corpus jurisdiction for petitions brought by aliens subject to deportation orders. A majority of district courts have concluded that they retain some degree of jurisdiction to consider habeas corpus petitions. *See Lerma de Garcia v. INS*, 141 F.3d 215, 217 (5th Cir.1998) (noting that the Fifth Circuit has held that deportees may apply for writs of habeas corpus); *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir.1997) (same); *see also Williams v. INS*, 114 F.3d 82, 84 (5th Cir. 1997) (noting that the "limited opportunity to apply for a writ of habeas corpus may remain"); *Mansour v. INS*, 123 F.3d 423, 426 (6th Cir.1997); *Kolster v. INS*, 101 F.3d 785,

790 (1st Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27, 30 (2d Cir.1996). But courts do not rely on the same reasoning for exercising jurisdiction. Some explicitly rely on 28 U.S.C.A. § 2241 (West 1998) (" § 2242" or "statutory writ"), *see, e.g., Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1091 (D.Colo. 1997); *Mojica v. Reno*, 970 F.Supp. 130, 160 (E.D.N.Y.1997), while others have concluded that the IIRIRA "abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute." *Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir.1997); *see, e.g., Rusu v. Reno*, 999 F.Supp. 1204, 1210 (N.D.Ill.1998) (district courts retain habeas jurisdiction within the narrow jurisdictional scope of the Suspension Clause, but not pursuant to § 2241). Still other courts have concluded that district courts do not have habeas jurisdiction at all, reasoning that any habeas claims must be brought in the appropriate appellate court. *See Hose v. INS*, 141 F.3d 932, 935 (9th Cir.1998); *Auguste v. Reno*, 118 F.3d 723, 725–26 (11th Cir.1997).

The Fifth Circuit has recognized that "limited opportunity to apply for a writ of habeas corpus may remain" for aliens facing deportation. *Williams*, 114 F.3d at 84 (noting similar conclusions by the First, Second, Third, and Ninth Circuits). "[A]t a minimum," the Fifth Circuit has stated recently, such aliens may bring the writ protected by the Suspension Clause. *Id.*

Here, the Court need not decide whether it has jurisdiction under the statutory writ[5] because Perez does not seek such relief.[6] Rather, his claim is based on a violation of the Suspension Clause. As such, it is clear the Court may exercise its jurisdiction pursuant to Fifth Circuit precedent. *See, e.g.,*

---

**4.** Whether new INA § 242(g) is applicable is inconsequential to the jurisdiction question at hand. *See Goncalves*, 144 F.3d at 122. Even had the Court found new INA § 242(g) applicable, jurisdiction over this matter would be proper because, as explained below, the Suspension Clause and appellate case law precedent provide the Court with authority to review the cause. *See, e.g., Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997).

**5.** Fifth Circuit cases such as *Okoro v. INS*, 125 F.3d 920 (5th Cir.1997) and *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.1996) are distinguish-

able in that they involved *direct review* of a deportation order, not habeas review.

**6.** The Court notes that in his brief, Perez states that the Court can construe his cause as a writ of habeas corpus. The Court does so construe this cause pursuant to the Suspension Clause (and not § 2241). To be sure, the Court does not address whether it can retain jurisdiction under 28 U.S.C. § 1331 or 8 U.S.C. § 1105a—two statutes upon which Perez relies for the Court's jurisdiction (in addition to the Suspension Clause).

*Williams,* 114 F.3d at 84. The more relevant question, therefore, is what scope of review is available under the Suspension Clause and whether the instant cause raises issues that lie within that scope.

### Scope of Review

 Because the Fifth Circuit expressly has declined to establish the bounds of judicial review available under the Suspension Clause in the context of challenges to the AEDPA and IIRIRA, it remains an open question in this circuit. *See Williams,* 114 F.3d at 84 ("[h]owever, this case does not require us to explore the perimeters of judicial review remaining available"). Other circuits and district courts have, again, reached conflicting conclusions on this issue. For example, some courts have found a very limited scope of review, available only for "grave constitutional error or a fundamental miscarriage of justice." *E.g., Mbiya v. INS,* 930 F.Supp. 609, 612 (N.D.Ga.1996); *cf., e.g., Gutierrez–Martinez v. Reno,* 989 F.Supp. 1205, 1209 (N.D.Ga.1998) (reaching same conclusion but in a § 2241 context); *Morisath v. Smith,* 988 F.Supp. 1333, 1339 (W.D.Wa. 1997) (same).[7] Other courts indicate that all constitutional claims lie within the scope of review in habeas claims[8]—a slightly broader scope than the "grave" constitutional error questions. *See, e.g., Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996) (where any constitutional rights are at stake, "judicial review may not be eliminated by statute"); *cf. Goncalves,* 144 F.3d at 125–26 (scope encompasses review of statutory merits under § 2241). Still even fewer courts take the other extreme view, finding that the scope of review encompasses the full range of judicial review, from grave constitutional error to simple writs of error and abuse of discretion. *See, e.g., Mojica v. Reno,* 970 F.Supp. 130, 163 (E.D.N.Y.1997); *cf. Sabino,* 1998 WL 313305 at *16 (concluding that § 2241 scope of review is not limited to claims of a fundamental miscarriage of justice or substantial

constitutional error); *Goncalves,* 144 F.3d at 124–25 (concluding that the scope of review in a § 2241 context includes considering pure statutory questions). The Seventh Circuit distinguished the scope of review under § 2241 from the scope under the Suspension Clause, as follows: "28 U.S.C. § 2241 offers an opportunity for collateral attack *more expansive* than the Great Writ preserved in the constitution...." *Yang,* 109 F.3d at 1195 (citing *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)) (emphasis added).

Given the absence of clear guidance from the appellate courts, the Court looks to the review courts exercised over deportation and exclusion orders under the Act of 1891 and Immigration Act of 1917 when the only review available was that "required by the Constitution." *See* Guttentag, 1021 PLI/Corp at *430. The cases show that the scope of review was indeed broad. *See, e.g., Mahler v. Eby,* 264 U.S. 32, 44, 44 S.Ct. 283, 288, 68 L.Ed. 549 (1924) (review based on absence of sufficient findings and lack of evidence to support warrant of deportation); *Zakonaite v. Wolf,* 226 U.S. 272, 274–75, 33 S.Ct. 31, 32, 57 L.Ed. 218 (1912) (review of insufficient evidence); *Gegiow v. Uhl,* 239 U.S. 3, 8–10, 36 S.Ct. 2, 2–3, 60 L.Ed. 114 (1915) (rejecting executive's broad interpretation of public charge exclusion provision); *Kessler v. Strecker,* 307 U.S. 22, 29–30, 59 S.Ct. 694, 697–98, 83 L.Ed. 1082 (1939) (rejecting executive's interpretation of ideological deportation provision); *Delgadillo v. Carmichael,* 332 U.S. 388, 390–91, 68 S.Ct. 10, 11–12, 92 L.Ed. 17 (1947) (rejecting executive's interpretation of "entry"); *see generally Uyemura v. Carr,* 99 F.2d 729, 732 (9th Cir.1938) (review of deportation order in habeas and affirming order, noting that "[w]e have carefully examined the record and it fails to show that proceedings were unfair, or were conducted in an improper manner, or that there was any abuse of discretion or any

---

7. One commentator has concluded that the "fundamental miscarriage of justice" standard is "erroneous" and "premature." Lucas Guttentag, The 1996 Immigration Act: Federal Court Jurisdiction–Statutory Restrictions and Constitutional Rights, 1021 PLI/Corp 415 (1997).

8. The Court recognizes that most courts address the scope of review issue in the context of statutory habeas rather than the Suspension Clause. The opinions on statutory habeas scope of review are helpful to the extent they indicate that the only review available is that "required by the Constitution", that is, the Suspension Clause.

denial of appellant's right to due process of law."); *Hok v. Nagle,* 48 F.2d 753, 756 (9th Cir.1931) (review reversing deportation for abuse of discretion); *Gonzales v. Barber,* 207 F.2d 398, 402 (9th Cir.1953) (review reversing deportation to correct erroneous statutory interpretation); *Mastrapasqua v. Shaughnessy,* 180 F.2d 999, 1002 (2d Cir. 1950) (overturning denial of discretionary suspension of deportation based on arbitrary application of statute); *United States ex rel. De Sousa v. Day,* 22 F.2d 472, 474 (2d Cir. 1927) (reversing denial of discretionary relief because of agency's improper construction of statute); *Engel v. Zurbrick,* 51 F.2d 632, 633 (6th Cir.1931) (rejecting as arbitrary and "without any support in the evidence" executive's finding that aliens likely to become public charges); *Nocchi v. Johnson,* 6 F.2d 1, 2 (1st Cir.1925) (rejecting executive's interpretation of public charge deportation provision); *Jouras v. Allen,* 222 F. 756, 758–59 (8th Cir.1915) (rejecting executive's findings based on unfairness of hearing).

The Court thus finds that the appropriate scope of review here encompasses at least review of the statutory merits of Perez's complaint. This position is consistent with the Fifth Circuit's concurrence with the First, Second, Third, Seventh, Ninth, and Eleventh circuits that "*limited* opportunity to apply for a writ of habeas corpus may remain'—at a minimum 'the writ that Art. I § 9 cl. 2 preserves against suspension'" *Williams,* 114 F.3d at 84 (emphasis added); *cf. Goncalves,* 144 F.3d at 124–25 (scope of review under § 2241 allows review of "pure statutory question[s]"); *Yang,* 109 F.3d at 1195; *Sabino,* 1998 WL 313305 at *16 and *18 (concluding that scope of review in a § 2241 context is broader than the limited "fundamental miscarriage of justice" standard and that the scope should be governed

by Administrative Procedure Act abuse of discretion standard). The Court further notes that this finding in no way should be construed as delineating the entire breadth of scope of review under the Suspension Clause.[9]

### Retroactivity of the AEDPA 440(d)

Having found that the Court has jurisdiction to review the cause at hand under the Suspension Clause and that the scope of review encompasses statutory review, the Court now turns to the statutory merits question. Perez challenges IIRIRA § 309(c)(4)(G) and AEDPA § 440(d) as impermissibly retroactive, relying on *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) and *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). It appears that the First Circuit is the only appellate court that has yet ruled directly on this issue.[10]

The First Circuit recently addressed the issue of whether Congress intended for AEDPA § 440(d)'s restrictions on INA § 212(c) relief applied retroactively to persons in Perez's position. *See Goncalves,* 144 F.3d at 126. After a thorough analysis of the question under *Landgraf* and *Hughes,* the First Circuit found that Congress did not intend its new provisions restricting such discretionary relief to apply retroactively and thus concluded that AEDPA § 440(d) did not apply retroactively. *Id.* at 133. Because the First Circuit dealt with the issue meticulously, completely and, in the Court's opinion, correctly, it is not necessary to repeat the First Circuit's analysis. It is sufficient to state that the Court is in concurrence with the First Circuit's ruling that AEDPA § 440(d) does not apply retroactively and, as such, AEDPA § 440(d) similarly should not apply retroactively here. *But see Laguerre*

---

**9.** The Court further agrees with the First Circuit's refusal to apply the very narrow standards of review to habeas petitions in the immigration context that are applied to review of federal and state court convictions under 28 U.S.C. §§ 2254 and 2255. *See Goncalves,* 144 F.3d at 124. "In cases concerning collateral review of state and federal convictions, a prisoner has already had substantial judicial review of his claims.... By contrast, no court, state or federal, has heard [the deportable alien's] claims." *Id.*

**10.** The Fifth Circuit suggests that AEDPA § 440(d) applies retroactively, relying on its prior holding in *Williams. See Nguyen,* 117 F.3d at 207 (citing *Williams,* 114 F.3d at 83–84). However, *Williams* clearly deals with AEDPA § 440(a) *not* § 440(d). As such, the Court views the issue as unresolved in the Fifth Circuit.

*v. Reno,* No. 97 C 8225, 1998 WL 100238, at *11 (N.D.Ill. Feb.17, 1998) (finding AEDPA § 440(d) should apply retroactively, reasoning that the section does not impair any rights the deportable alien had when he committed the crime for which AEDPA § 440(d) rendered him ineligible to apply for old INA § 212(c) discretionary relief and that AEDPA § 440(d) only limits the discretionary relief available).[11]

Having found that AEDPA § 440(d) is not retroactive, the Court does not reach Perez's constitutional challenges. *See Goncalves,* 144 F.3d at 134. The Court therefore is of the opinion that Perez's petition for a writ of habeas corpus should be granted to the extent that the case is remanded to the Board of Immigration Appeals for a discretionary determination of the merits of his application for relief under the old INA § 212(c). Responsibility would then lie with the Attorney General, through the BIA, to exercise her discretion to allow Perez to avoid deportation.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that Perez's petition for a writ of habeas corpus is **GRANTED** to the extent that the case is **REMANDED** to the Board of Immigration Appeals for a discretionary determination of the merits of his application for relief under the old INA § 212(c).

### FINAL JUDGMENT

On this day, the Court entered an Order denying Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed on July 2, 1998, and granting Plaintiff's request for writ of habeas corpus pursuant to Article I, section 9, clause 2, of the United States Constitution in the above-captioned cause. The Court now enters its final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or, in the

alternative, Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Perez's petition for a writ of habeas corpus is **GRANTED** to the extent that the case is **REMANDED** to the Board of Immigration Appeals for a discretionary determination of the merits of his application for relief under the old INA § 212(c).

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED.**

**IT IS FINALLY ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**

---

11. *Goncalves* was decided some three months *after* the district court ruled in *Laguerre,* an unpublished opinion. The First Circuit addressed and dismissed the very arguments the district court relied on in *Laguerre. See Goncalves,* 144 F.3d at 129–30.